## George I. Knight *vs.* Orville H. Forward.

It was not the intention of the legislature, by the sections of the Revised Stat-
utes relative to fraudulent sales of goods and chattels, (3 *R. S.* 222, §§ 5, 6,
*5th ed.*,) to provide that after a sale of personal property, it might not at any
time pass into the possession of the vendor, without raising the presumption
that the sale was made with intent to defraud creditors.

When it appears that property has passed into the hands of the vendor for a
mere temporary purpose, and under circumstances which show that the
return of the possession was not with a view of enabling the vendor to use it
as his own while the legal title was in another, the creditors of the vendor
are not authorized to attack the sale as fraudulent and void.

Where, upon the sale of a cutter by a son, to his father, there was an immediate
change of possession, but the father occasionally allowed his son, the vendor,
to use the property, and after use, it was again returned to his possesion;
*Held* that the change of possession was continued, within the meaning of the
statute; and that there was no presumption of fraud, against the sale.

Where a fraudulent intent cannot, under the circumstances, be presumed,
against a purchaser, it is not necessary for him to disprove such intent. If
the facts proved are such as to carry the question of fraud, in a sale, to the
jury, and they have found against it, their finding is conclusive.

The acts and declarations of a vendor, in respect to the property sold, after
the sale, are not competent evidence to impair or destroy the purchaser's
title.

A witness can only be impeached as to material evidence.

Evidence which goes to show that a witness has given versions, out of court,
of the transaction to which he is testifying, essentially different from, or
wholly inconsistent with, the truth of the evidence given by him, is admis-
sible on the ground that his reputation for truth and veracity is directly
assailed.

It is competent to examine a witness as to contradictory statements made by
him, and to contradict him if he denies having made them.

A vendor of property, being examined as a witness to prove the sale, was
asked, on his cross-examination, whether he had not, at a time subsequent
to the alleged sale, offered to sell the same property, as the owner thereof,
to another. This question was objected to, and the objection sustained.
*Held* that this was legitimate cross-examination, and the party was entitled
to the witness' answer; and that the court erred in rejecting the evidence.

THIS action was brought in a justice's court, to recover
for the conversion of a cow, cutter, sulky and harness.
On the trial the sulky was withdrawn. The answer was
a general denial; under which the defendant justified the
taking, as deputy sheriff, under and by virtue of a judg-

ment and execution in favor of the Black River Bank against J. R. Knight and the defendant, Forward. Knight was the principal debtor, and the sheriff levied by direction of Forward. On the trial the taking of the property was admitted by the defendant, and its value was proved. The cause was tried before the justice and a jury. The plaintiff obtained a verdict, and judgment was rendered, by the justice, in his favor, for $31.36, damages and costs. From this judgment the defendant appealed to the county court of Jefferson county, where the judgment was affirmed; and the defendant appealed to this court.

*F. W. Hubbard*, for the appellant.

I. The plaintiff deriving his title to the property from J. R. Knight, his son, and the execution debtor, was bound as against a creditor, to show that he purchased the property in good faith, and for a sufficient consideration. This he did not do. The plaintiff knew that his son was involved in debt, and no doubt the intent was to absorb or cover up all his property, to keep it from creditors. J. R. Knight says: "My father proposed the sale consummated in writing; he wanted I should let him have all the property I could," &c. When the intent is so apparent, we insist that the plaintiff must give clear proof of his being a creditor, or purchaser in good faith for value, in a contest with another creditor concerning the property. The property, when levied on, was in J. R. Knight's possession, and practically had always been in his possession. He could not prove his title, except through the bill of sale. The burden was on him to show his actual title, having no possession. Under these circumstances, the recital, in the bill of sale, of the indebtedness from J. R. Knight to the plaintiff, although good as between them, was not sufficient evidence as against a creditor. If the plaintiff had such a note as recited, he could have produced it. The plaintiff failed to show himself a creditor of his

Knight *v.* Forward.

son, or that in good faith he paid any consideration for the purchase of the property.

II. J. R. Knight was a witness for the plaintiff, and testified to the sale of the property in question to the plaintiff, at the date of the bill of sale, February, 1859. On his cross-examination, he was asked this question: "About two years ago next November, in Brownville, on the road going to Alexander Moffatt's, did you tell the defendant that you dare not own property in your own name, and that you had executed a bill of sale to your father, for the purpose of covering up your property from a judgment obtained against you on a claim in Philadelphia, or words to that effect?" This question was objected to as immaterial, and as too uncertain as to time and place. The objection was overruled, and the witness answered, "I do not think I did." The bill of sale had then been given in evidence, and was distinctly referred to in the question. The object of the question was impeachment; and the same question was put to the defendant, and the justice excluded the answer, under objection of the plaintiff. It is presumed that it was excluded on the ground that the question was too uncertain as to time and place. If so, it was error, for the time and place are both stated distinctly. It was equally error to exclude it on the ground that it did not pertain to the merits of the case. The answer would have contradicted the witness, in a vital particular of his testimony directly on the merits. He had sworn that he had sold the property to the plaintiff. The evidence offered was to show that he had stated out of court substantially that he had not. This was material to the issue. (1 *Greenl. on Ev.* § 462, *and cases cited.* 1 *Cowen & Hill's Notes,* 509, 533, *ed. of* 1839. *Newton* v. *Harris,* 6 *N. Y.* 345.) On the defense, this question was put to J. R. Knight: "Did you, about a year ago last September, in the village of Brownville, offer to sell the cutter and harness in question to the defendant, as your

property?" The answer was excluded under a general objection of incompetency and immateriality. The same question was put to the defendant, and the answer excluded. The ruling of the justice was erroneous. The defendant was entitled to the answer, which would show the act and declaration of J. R. Knight directly inconsistent with his testimony. We were entitled to the answer of Knight, even if we could not contradict him, on the ground of its being collateral to the issue. We, however, think it material. The whole matter of the pretended sale was a fraud, and hence the tenacious objection to that species of proof, which would have tended to disclose it. It may further be observed, that these declarations were made by J. R. Knight, when he was in the actual possession of the property, and his claim of ownership would have thoroughly impeached his testimony with the jury. The justice excluding the proof he did, the defendant forbore to give much evidence which he could have given, and among other things, the general bad character of the plaintiff. It cannot be urged that there was evidence enough, aside from that of J. R. Knight, to sustain the judgment. It is enough that the plaintiff did not prove, first, title to the property, or a *bona fide* purchase for a sufficient consideration; and, second, that competent and important evidence was excluded.

III. The question of justification, under a general answer, cannot be raised on this appeal. The objection, if taken in the court below, could have been obviated by amendment, of the answer. (4 *Seld.* 204. 2 *id.* 345. 2 *Kern.* 481, 486. 16 *Barb.* 643. 4 *E. D. Smith*, 276.)

*Wm. H. Browne*, for the respondent.

I. The plaintiff derived title to this property from his son, J. R. Knight, under the bill of sale, which was admitted in evidence. The property mentioned in this paper was delivered to the plaintiff at the time of sale,

Knight *v.* Forward.

and the amount was credited on the note mentioned. The plaintiff was a holder for value. In his cross-examination, he says: "I paid fully for the note mentioned in paper A," [the bill of sale.] . The cow in question was purchased in July, 1861; was delivered to the plaintiff, and he had paid for her. The defendant, without a single fact to contradict this statement, claims the transaction was fraudulent as against the creditors of J. R. Knight, and yet, at the time of the transfer of the property by J. R. K. to the plaintiff, in 1859, the debt upon which judgment was recovered, and on which the property in question is attempted to be taken, did not exist, nor until some two years after. 1st. Fraudulent intent is a question of fact, and not of law. 2d. The appellate court will set aside a verdict on a question of fraud, only when it is against evidence; where there is no valid consideration to support it; or where the facts shown are otherwise, *per se*, conclusive evidence of fraud. (6 *Hill*, 433. 4 *id.* 271. 11 *Wend.* 241.)

II. It was incompetent, as a defense to the action, to ask the witness, J. R. Knight, whether he offered to sell the harness and cutter as his property. Anything he might have said, or could say, after he had parted with his title to the property, could not affect the rights of the plaintiff. It was incompetent for any purpose; if for impeachment, it was too indefinite; and no object being stated for what purpose the evidence was intended, the ruling was correct. The same reason applies to the subsequent offers to prove that J. R. Knight had offered to sell the property; and the further reason that neither of these questions had been put to the witness J. R. Knight, as was necessary, if they were competent for impeaching purposes. It was also incompetent under the answer, the defendant not having set up any justification to excuse the taking of the property. The most that can be urged in regard to the ruling of the justice upon these questions, is that the evidence tended to discredit the evidence of

the witness, J. R. Knight. Leave his evidence entirely out of the case, and it is supported by clear and positive evidence, and nowhere contradicted. So far as we know, the jury did so; at least they did not base their verdict upon his estimate of the value of the property.

III. The county court, in affirming the judgment, decided the case as the right demanded, without regard to technical errors. It was the duty of the court so to do. (*Code,* § 366. *Bort* v. *Smith,* 5 *Barb.* 283, 285, *and cases there cited.*)

*By the Court,* MULLIN, J. The action before the justice was trover, for the value of a cutter, sulky, harness and cow. The sulky was withdrawn, on the trial. The answer was a general denial of the complaint. The defense insisted on was fraud in the sale of the property in question from J. R. Knight to his father, the plaintiff; and as against the said J. R. Knight, a judgment and execution, by virtue of which the said property was seized and sold. The defendant was the owner of the said judgment.

It appeared on the trial, that in February, 1859, a bill of sale of the property in question, with other property, was made and delivered by said J. R. Knight to the plaintiff to apply, as stated in the paper, in payment of a note given by said J. R. Knight to one Nathan T. Knight for $223.42, and which was then held by said plaintiff. This bill of sale covered the cutter. The cow was sold to the plaintiff, as alleged, in July, 1861, by said J. R. Knight, for $26, to apply on a debt due him from the firm of Tremaine & Knight, of which said J. R. Knight was a member. The levy was made on the 5th of September, 1861. The judgment against J. R. Knight was 31st August, 1861. When the levy was made the cutter was in a barn owned by Tremaine, but occupied by the firm of Tremaine & Knight. The cow, in the absence of evidence

Knight *v.* Forward.

to the contrary, must be presumed to have been in the possession of the plaintiff at the time of the levy.

The plaintiff and his son both testify that the property covered by the bill of sale, and the cow, were delivered to the plaintiff, but that J. R. Knight used the property mentioned in the bill of sale, occasionally. At the time of the sale, in February, 1859, the debt for which the judgment against J. R. Knight was recovered was not contracted, nor does it appear that he was then unable to pay his debts. The plaintiff testifies that he knew he and his son owed debts, and he wished to save himself. He further says he paid fully for the note mentioned in the bill of sale. If this evidence is susceptible of the construction that the son was insolvent at the time of the sale, and that the plaintiff knew it, and made the purchase with the view of defrauding the son's creditors, it was for the jury to draw it. They have not drawn it, but on the contrary have found the sale free from fraud; and this must be held conclusive, unless there is some exclusion of evidence which has prevented the question of fraud from being fully presented to the jury.

Upon whom rested the burthen of proof? Was it on the plaintiff to disprove the fraudulent intent, or for the defendant to prove it affirmatively?

The cutter and sulky were sold in February, 1859, in part payment of a note. At that time the defendant was not a creditor. The property was put into the hands of the plaintiff, and the son permitted to use it occasionally. The statute (3 *R. S.* 222, § 5, *5th ed.*) declares that every sale by a vendor, of goods and chattels in his possession or under his control, unless accompanied by an immediate and followed by a continued change of possession of the things sold, shall be presumed fraudulent and void as against the creditors of the vendor, and shall be conclusive evidence of fraud, unless it be made to appear on the part of the person claiming under such sale, that the same was

made in good faith, without intent to defraud such creditors or purchasers. Section 6 provides that the term creditors, as used in the preceding section, shall be construed to include all persons who shall be creditors of the vendor at any time while such goods and chattels shall remain in his possession or under his control. Is the defendant a creditor, within the meaning of the statute ?. Was it the intention of the legislature to provide that after a sale of goods and chattels, they may not at any time pass into the possession of the vendor, without raising the presumption that the sale was made with intent to defraud creditors ? It seems to me not. When it appears that property has passed into the hands of the vendor for a mere temporary purpose, and under circumstances which show that the return of the possession was not with a view of enabling the vendor to use it as his own while the legal title was in another, the creditors of the vendor are not authorized to attack the sale as fraudulent and void. In this case, it would seem, the father occasionally allowed his son, the vendor, to use the property, and after use it was again returned to his possession. The change of possession was immediate, and was continued, within the meaning of the statute ; and there was no presumption of fraud against the sale. This applies to the cutter.

The cow was transferred by a subsequent sale. She was taken in part payment of an old debt. There is no evidence that she has ever been out of the possession of the plaintiff. As to the cow, therefore, there is no ground to allege fraud in the sale. It was a fair question whether the cow was not sold after the levy by the sheriff. The plaintiff says he bought the cow of his son about the 20th or 23d of July. J. R. Knight says : "I bought her (the cow) of William Martin, and when she was delivered to my father, Mr. Welsh told me he had levied upon the property in question." The deputy sheriff says : "Shortly after the levy on the property in question, I went to the plaintiff's

house, and the plaintiff said he had a paper showing that he had bought some of that property of Randolph. The plaintiff did, on this occasion, show me the writing. I asked for it. Randolph said he wanted to see the plaintiff first, and went and saw him first, and then opened the door and told me to go in." If I understand the evidence of J. R. Knight, it is that it was after the levy that he delivered the cow to his father. The statute (3 *R. S.* 649, § 13, *5th ed.*) declares that whenever any execution shall be issued against the property of any person, his goods and chattels situated within the jurisdiction of the officers to whom such execution shall be delivered, shall be bound only from the time of the delivery of the same to be executed. Section 16 declares that the title of any purchaser in good faith of any goods or chattels acquired prior to the actual levy of any execution, without notice of any such execution being issued, shall not be divested by the fact that such execution had been delivered to an officer to be executed before such purchase was made. The plaintiff says he purchased in July; his son says he delivered the cow after the levy, which was on the 5th of September. It was for the jury to say which they would believe, and they have found for the plaintiff.

There was nothing in the case, therefore, that rendered it necessary for the plaintiff to disprove a fraudulent intent, as no such intent could, under the circumstances, be presumed against him.

If the facts proved were such as to carry the question of fraud to the jury, they have found against it, and their finding is conclusive.

The only remaining question is, whether any error was committed in the reception or rejection of evidence on the trial.

J. R. Knight was asked, on cross-examination, whether he did not, about a year ago last September, in the village of Brownville, offer to sell the harness and cutter in ques-

tion to the defendant, as his (witness') property. This question was objected to, and the objection was sustained. The question called for the acts and declarations of the witness as to the property after he had sold it to the plaintiff. These acts and declarations were not competent to impair or destroy the plaintiff's title. They were utterly incompetent on the merits of the controversy. They could be used only for the purpose of affecting the credibility of the witness, either by his own answers or by the evidence of others called to show that he did make the offer mentioned in the question, should he deny it.

A witness can only be impeached as to material evidence. (1 *Cowen & Hill's Notes*, 726 to 728.) It is not unfrequently quite difficult to determine what is, and what is not, material evidence, or within the rule which admits of witnesses being called to impeach a witness by showing that he has made declarations or done acts, out of court, inconsistent with his statements made on oath in court. It has been held by the Court of Appeals that evidence which goes to show the state of feeling of the witness toward the party against whom he is called, is material within the rule referred to. (*Newton* v. *Harris*, 6 *N. Y.* 345.) The meaning of which is, that if the witness is influenced by passion or prejudice, the jury should know it, in order that they may the better estimate the weight to be given to his evidence. His veracity is affected. It seems to me the same considerations should admit evidence going to show that the witness has acted or given versions of the transactions to which he is called, out of court, essentially different from, or wholly inconsistent with, that testified by him. Indeed, the Court of Appeals has held, in *Patchin* v. *The Astor Mu. Ins. Co.*, (13 *N. Y.* 268,) that it is competent to examine a witness as to contradictory statements made by him, and to contradict him if he denies having made them. The offer to sell by the witness, J. R. Knight, made after he knew he had sold to his father,

was wholly inconsistent with the truth of the evidence given by him, and his reputation for truth was directly assailed. His want of truth cannot be shown, unless witnesses are permitted to be called against him. It seems to me, therefore, that the defendant should have been permitted to put the question which was objected to and rejected, and to have shown by other witnesses that he did make the offer, if he denied it. But if I am wrong in supposing that he might contradict the witness, still I entertain no doubt but that he had the right to have the question answered, although he may not have had the right to contradict him. It was legitimate cross-examination, and the party was entitled to the witness' answer. If he admitted making the offer, the defendant had accomplished his object. If he denied it, the answer would conclude him. I am of opinion that the justice erred in rejecting the evidence, and that the judgment of the county court and of the justice should be reversed.

[OSWEGO GENERAL TERM, July 14, 1863. *Allen, Mullin, Morgan* and *Bacon*, Justices.]