(50 Misc. Rep. 412.)

### SJOBERG v. FIELD et al.

(Supreme Court, Special Term, New York County. May, 1906.)

FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE.

Two days before trial of a suit against him, a son executed a bill of sale of all his assets to his mother. Plaintiff in the action recovered judgment. The bill of sale was given for a previous indebtedness for which the mother was not pressing her son, and after the conveyance the

son continued in control of the property. His mother knew of the debt to plaintiff, though the son did not always tell her how he stood when he obtained money from her. *Held*, that the mother had sufficient knowledge to put her on inquiry as to the effect of the bill of sale on creditors and as to her son's intent, and a judgment setting the sale aside was proper.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, §§ 500–503.]

Action by John P. Sjoberg against Charles C. Field and Fannie S. Field to set aside a bill of sale. Judgment for plaintiff.

T. A. McKennell, for plaintiff.

C. G. Macy, for defendants.

GILDERSLEEVE, J. This is an action to set aside a bill of sale made by the defendant Charles C. Field to his mother, the other defendant, Fannie S. Field. The plaintiff is a judgment creditor of said Charles C. Field. The debt of said Field to plaintiff accrued in June, 1903. An action was commenced thereon and the cause appeared on the calendar for trial on June 6, 1904. Two days previous thereto, viz., on June 4, 1904, the said Field made and .executed the said bill of sale to his mother, conveying to her all of his assets, and on June 6, 1904, the day the case was reached for trial, the said bill of sale was filed in the register's office. Thereafter, and on June 14, 1904, plaintiff recovered a judgment against said Charles C. Field for $723.36. Execution thereon was duly issued and returned unsatisfied. Plaintiff thereupon brought the present action to set aside said bill of sale. There was no present consideration for the said bill of sale, which was given in payment of an alleged past indebtedness. No written evidence of a discharge of such past indebtedness was given in exchange for the bill of sale, nor was there any surrender of any evidence of the alleged indebtedness. It appears, however, that for some considerable time the mother had been in the habit of furnishing money to help her son, the said Charles C. Field, out of pecuniary embarrassment and business difficulties. She kept no account of these sums of money, and even says she did not care if she never got the money back. Her testimony on this point is as follows, viz.:

"I really thought what I did for my son was all right if I never got it back. Q. You say that when you advanced these moneys to your son you did not care whether he repaid them to you or not? A. I did not care then, and I care less now, for all the world."

She says she did not want her son's business seized by any of his creditors, as she was willing to pay them all, and thought the property transferred to her was "the stock that he was getting his bread and butter with." She left him in full possession and control of the property after the bill of sale had been made, executed, and filed. The son continued to conduct the business as before, merely adding the word "agent" to his name. She further states that she wished plaintiff to be paid. The sums of money furnished by the mother to the son would seem to be more in the nature of gifts than loans; but, as there is positive evidence that they were intended as loans, we will regard them in that light in disposing of this case. The son swears the amount of his

indebtedness to his mother was $4,611,83, an amount considerably in excess of the value of the property conveyed.

While the learned counsel for the plaintiff concedes that, as a matter of law, a past indebtedness constitutes a valuable consideration, and that a debtor may lawfully transfer all of his property to one or more of his creditors in payment of a valid indebtedness, still he urges that the transfer in question was not made in good faith, but was made with an intent to hinder, delay, or defraud creditors; and he claims that, in view of such intent, the bona fide character of the indebtedness, if thus it be, which forms the consideration for the transfer, will not save the transaction from illegality. Under the personal property law (Laws 1897, c. 417, §§ 24, 25) a sale of personal property, made with intent to hinder, delay, or defraud creditors, is void as against such creditors; and it is presumptive evidence of fraud, such as vitiates the sale of goods and chattels under the control of the vendor, if the sale is not accompanied by an immediate delivery of the property to the vendee, followed by actual and continued change of possession; and it is conclusive evidence of such fraud unless it appears, on the part of the person claiming under the sale, that it was made in good faith and without intent to defraud such creditors. As we have seen, the son continued in possession and control of the property, so that a presumption of fraud in the sale exists, which becomes conclusive, unless it shall be made to appear, on the part of defendants, that the sale was made in good faith and without any intent to defraud the plaintiff. New York Ice Co. v. Cousins, 23 App. Div. 560, 48 N. Y. S. 799. I think, as I have above intimated, that the mother must be regarded as a purchaser for a valuable consideration. Under section 29 of the personal property law (Laws 1897, c. 417), the title of a purchaser for a valuable consideration is not impaired, unless it appears that such purchaser had previous notice of the fraudulent intent of the vendor. I do not think the evidence would at all warrant a conclusion of actual fraudulent intent on the part of the mother, but the circumstances disclosed fairly establish an intent on the part of the son to prevent plaintiff from obtaining payment of his claim.

The question then arises, did the mother have notice of the fraudulent intent of the son? As the vendee paid a valuable consideration for the property transferred to her, proof of the fraudulent intent of the vendor alone is not sufficient to defeat the sale; but there must also be shown a fraudulent intent on the part of the vendee, or that she had notice of the vendor's fraudulent intent. Starin v. Kelly, 88 N. Y. 421. As I have just said, there was no fraudulent intent shown on the part of the mother; and we must, therefore, base our conclusion as to the validity of the sale upon the answer to the question above put, did the mother have notice of the fraudulent intent of the son? The mere fact of the payment of a valuable consideration upon a transfer of property is not, as a proposition of law, inconsistent with the existence of an intent to defraud. Billings v. Russell, 101 N. Y. 226, 4 N. E. 531. It is sufficient to render a bill of sale void that the purchaser had notice or knowledge of the vendor's fraudulent intent, even though the purchaser may not have participated therein. Greenwald v. Wales, 174 N. Y. 144, 66 N. E. 665. The proof of notice to

the purchaser of the fraudulent intent of the vendor need not be direct
and positive; but such notice may be proved, like any other fact in the
case, by circumstances and proper and legitimate inferences to be
drawn from the whole transaction; and it is sufficient to show that
the purchaser was aiding and assisting the vendor in perpetrating a
fraud, and from such facts notice can be inferred. Starin v. Kelly, 88
N. Y. 421. The mother in a general way denies she knew the situation
of her son's affairs, but the son admits that he "confided" his busi-
ness affairs to his mother. The latter was aware of her son's indebted-
ness to plaintiff. The testimony as to the mother's knowledge or lack
of knowledge is that of the two defendants, who, as hostile witnesses,
rendered it more difficult for plaintiff to establish such knowledge on
the part of the mother as would constitute notice to her of her son's
fraudulent intent. The plaintiff was pressing his suit against the son,
who brought his aged mother from Brewsters to this city in order to
have her present at his lawyer's office when the bill of sale was exe-
cuted. They had more or less conversation, in which it is reasonable
to suppose that some explanation was given for the necessity of the bill
of sale. The son knew plaintiff's case was expected to appear shortly
on the calendar, as it did appear two days after the execution of the
bill of sale. The mother was in no way pressing her son for payment
of her loans to him, and no immediate necessity for the bill of sale
appeared to exist, except the pending suit of plaintiff. If the mother
did not actually know that the bill of sale covered all the son's assets,
leaving nothing with which to meet plaintiff's claim, she had suffi-
cient knowledge to put her on inquiry as to the effect upon creditors
of the bill of sale. She had paid other claims of creditors against her
son, and had discussed more or less his matters with him. The son
states that he did not "always" tell her how he stood when he obtained
money from her, thereby implying that he did sometimes disclose his
situation; and, as we have seen, he states that he confided his business
affairs to her, presumably meaning that such was his general custom.
It was clearly the mother's desire to save her son's property for his
own benefit, and not to be repaid for the loans made to him by her-
self. While, as I have said, there is no proof of actual fraud on the
part of the old lady, who seems to have been a worthy and devoted
mother, still she had such knowledge as at least was sufficient to put
her on inquiry as to her son's intent. She aided her son to hinder,
delay, and defraud his creditor by accepting a bill of sale of all his
property, leaving the creditor without means of collecting his debt,
and then left the son in possession and control of the property to con-
tinue the business. The bill of sale cannot be regarded as a payment
by a debtor to his creditor, but as a sale of goods and chattels with
intent on the part of the vendor to hinder, delay or defraud his credi-
tor, and with notice to the vendee of such fraudulent intent.

Plaintiff is entitled to judgment, with costs.

Judgment for plaintiff, with costs.