## HICKOK v. COWPERTHWAIT et al.

(Supreme Court, Appellate Division, Second Department.  November 19, 1909.)

1. FRAUDULENT CONVEYANCES (§ 273*)—INTENT—EVIDENCE.
      A voluntary transfer without consideration by one indebted is a fact from which a fraudulent intent may be inferred.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 805; Dec. Dig. § 273.*]

2. FRAUDULENT CONVEYANCES (§ 295*)—EVIDENCE—SUFFICIENCY.
      Fraud in a conveyance may be proved by circumstances.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 870; Dec. Dig. § 295.*]

3. FRAUDULENT CONVEYANCES (§ 61*)—INSOLVENCY—TRANSFER TO RELATIVES.
      Transfers by an insolvent to members of his family will be scrutinized with the utmost care.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 153–158; Dec. Dig. § 61.*]

4. FRAUDULENT CONVEYANCES (§ 308*)—CONSIDERATION—INTENT—QUESTION FOR JURY.
      Mere proof that a transfer was given to secure an antecedent debt does not, as a matter of law, disprove the existence of fraudulent intent on the part of the debtor.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 937; Dec. Dig. § 308.*]

5. FRAUDULENT CONVEYANCES (§ 132*)—RETENTION OF POSSESSION.
      A continued use and control of property transferred by an insolvent is a badge of fraud, and requires proof of good faith.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 407–424; Dec. Dig. § 132.*]

6. FRAUDULENT CONVEYANCES (§ 282*) — INTENT OF GRANTEE — BURDEN OF PROOF.
      When fraudulent intent on the part of an assignor is proved, and the assignee has not parted with a valuable consideration, the latter must show his good faith.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 817, 818; Dec. Dig. § 282.*]

7. FRAUDULENT CONVEYANCES (§§ 298, 301*)—INTENT—EVIDENCE—SUFFICIENCY.
      Evidence *held* sufficient to show that a transfer of stock by an insolvent debtor to his son was made with fraudulent intent and that the son was a party to the fraud.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 892, 904; Dec. Dig. §§ 298, 301.*]

Appeal from Special Term, Kings County.

Action by Frank M. Hickok, as receiver of Frank H. Cowperthwait, against Frank H. Cowperthwait and others.  From a judgment for defendants, plaintiff appeals.  Reversed, and new trial granted.

Argued before JENKS, BURR, RICH, and MILLER, JJ.

Samuel Evans Maires, for appellant.

Lewis Squires, for respondents.

BURR, J.  This action is brought to set aside as fraudulent as against judgment creditors certain transfers of stock of the Brook-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lyn Chair Company and the Brooklyn Factory & Power Company, which had been made by Frank H. Cowperthwait to his son, Frederick S. Cowperthwait. On the trial the defendant Frank H. Cowperthwait was called as a witness for the plaintiff, and his testimony then given and his testimony taken in proceedings supplementary to execution under the judgments above referred to comprised all of the testimony offered by the plaintiff relating to. such transfer. At the close of the plaintiff's case the court at Special Term dismissed the complaint and directed judgment upon the merits in favor of the defendants.

At the time of the transfer the defendant Frank H. Cowperthwait owned 99 shares of the stock of the Brooklyn Chair Company, represented by four separate certificates, and 376 shares of the stock of the Brooklyn Factory & Power Company, represented by seven different certificates. Each of these certificates had been hypothecated, and was held by a third person as security for a debt then owing by the said Frank H. Cowperthwait. No consideration was recited in the written papers purporting to assign said stock, and nothing was paid by the said Frederick S. Cowperthwait, nor received by the said Frank H. Cowperthwait, at the time of their execution. It was conceded that the said Frank H. Cowperthwait was at that time insolvent.

A voluntary transfer without consideration by one indebted is a fact from which a fraudulent intent may be inferred. First Nat. Bank v. Miller, 163 N. Y. 164, 57 N. E. 308; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; Cole v. Tyler, 65 N. Y. 73; Erickson v. Quinn, 47 N. Y. 410. While fraud must always be proved, and never presumed, it can seldom be proved by direct evidence, but is dependent upon circumstances. Circumstances indicating fraud, which, separately considered, might be quite immaterial, when combined may have great probative force. First Nat. Bank v. Miller, supra. Transfers by one insolvent to members of his family are always scrutinized with the utmost care, because fraud is so easily practiced and concealed under cover of such relations.

When asked upon the trial with regard to the consideration for the transfer of these various certificates, the defendant Frank H. Cowperthwait claimed in the first instance that the consideration was the sum of $6,000, which had been received upon a sale of certain property belonging to the estate of Mary E. Cowperthwait, his deceased wife, and that as the result of a conversation between himself and his children he was to have the use of that money, although no time was fixed when he should ever repay it to the estate. It appears from the will of the said Mary E. Cowperthwait that a trust estate was created in her property, the income of which was to be paid to her husband during his life, with remainder over to her children or grandchildren, at certain times and upon certain conditions in said will specified. None of his children were called as witnesses to confirm his statement with regard to their consent to his use of such money, nor was there any evidence of any consent on the part of any of his grandchildren, nor, indeed, of any power on the part of anyone to consent in their behalf. He further testified that he was to use that money—

"in connection with the transfer of those stocks, as I saw fit; but the understanding was that it was to be used to pay the debts of the Rattan Com-

pany, * * * and to preserve the liens on those stocks, and to pay interest or take up the loans on the stock I transferred."

Subsequently in his testimony he claimed that he had deposited the $6,000 in the bank, had not used it, and had not had occasion to use it, for such purpose; but he refused to state whether he had the $6,000 then on hand, and questions on the part of the plaintiff whether he had ever filed an account of the estate of his wife, or obtained any decree authorizing and directing the payment to him of this $6,000 for the purpose stated by him, were objected to by the defendants, and the objections sustained. No such claim was made when he was examined in supplementary proceedings, and this claim was substantially abandoned by him during the trial of this action.

The defendant then attempted another explanation of the consideration for the transfer of this stock. He testified that in September, 1894, one James W. Gerard recovered a judgment against him for the sum of $13,000. He paid $1,000 on account, and on January 21, 1897, five of his children, Frederick S. Cowperthwait, Franklin C. Cowperthwait, Mary L. Tyler, Agnes C. Lawton, and Ellen Cowperthwait, each contributed the sum of $2,400 and paid the balance remaining due thereon. A note was given to each of these children for the sum so advanced, and the judgment was thereupon assigned to the said Frederick S. Cowperthwait in behalf of the said five children. Interest was paid on all of the notes for a period of six months to June 21, 1897, and interest upon one of the notes held by his daughter Agnes to December, 1907. Nothing else has been paid. He also claimed that in January, 1898, two of his children advanced the further sum of $15,000 each to other creditors of his. It does not appear that this claim was assigned to them, or to any one for their benefit, nor that any evidence of his indebtedness to them in connection with such claim was ever executed or delivered. He testified that at the time the transfer was made he had a conversation with his son Frederick to the effect that, when the liens were paid off upon the stocks which were transferred, they were to belong to said son as trustee. He first stated that these stocks were to be taken in payment of the Gerard judgment hereinbefore referred to, as far as the equity would go, and, if there was more than enough to pay that, the surplus was to be applied in payment of the indebtedness of $30,000 for moneys advanced to him as before stated in 1898. Afterwards he testified that these stocks were to be held by the trustee as security for the payment of said claims.

It does not appear that at the time of the transfer either of his children was pressing him for the payment of the notes, or of any claim in their behalf against him, nor that they were parties to any agreement to accept the transfer of these stocks, either as payment or security. While it is true that a transfer of property, made in good faith to secure an antecedent debt, is not necessarily fraudulent, the mere proof that it was so given does not as matter of law disprove the existence of fraudulent intent on the part of the debtor. When other circumstances exist which clearly indicate that the real purpose of the transfer was to hinder creditors in the collection of their just claims, and enable the assignor to still control and make use of his property for his own

benefit, the mere existence of an antecedent debt is not alone sufficient to validate the transaction. Cole v. Tyler, supra; Coleman v. Burr, 93 N. Y. 17, 45 Am. Rep. 160. The use that is made of assigned property, and the acts of the parties to such assignment in connection with it, furnish valuable data to judge of the motive and intent with which it was executed. Forbes v. Waller, 25 N. Y. 430–438.

A continued use of property transferred by an insolvent debtor is a badge of fraud. As an honest purchaser buys property because he wants it, and the possession of it, the absence of any evidence of transfer of possession or control indicates some purpose different from that of an honest purchaser, and requires proof of good faith and honest intention. Wright v. Seaman, 32 App. Div. 106, 52 N. Y. Supp. 893; Young v. Heermans, 66 N. Y. 374; Stimson v. Wrigley, 86 N. Y. 332; Kain v. Larkin, 4 App. Div. 209, 38 N. Y. Supp. 546; Id., 141 N. Y. 144, 36 N. E. 9. The use that was made of this stock and the management and control of it clearly show a manifest purpose on his part to hinder and delay his creditors. Defendant testified on the trial that:

"The whole matter was a secret understanding between my son and myself, a verbal understanding."

In his examination in supplementary proceedings he said:

"The idea was to carry the stocks along so that the stocks should not be sacrificed, and I was to have the dividends for my own use. While Fred held the stocks nominally in trust, I still had the management of them, to keep them from being sacrificed and sold, and when the necessity arose I was to have the right to borrow money on the stocks, to be used in liquidation of the Union Rattan Manufacturing Company."

He further stated that he received the dividends on these stocks, or a portion of them, and that:

"I used them in my living expenses and to pay my debts—to pay obligations of mine that were coming due. They are all used up. I have spent them all, and haven't a dollar of them now. I don't know whether I can separate them from my living expenses or not. They were used for my personal uses and for my other debts. I can't separate them, because I don't know. I have used them up; that is all I know. What wasn't used to pay debts, I used up personally in my living expenses; but I can't tell just how much."

On his examination at the trial, while admitting that he had collected the dividends since the date of the transfer and that they were all consumed, he did state that he had not received any personal benefit from these dividends, but that the money was all expended in payment of interest and on account of the principals of the loans. It is impossible to reconcile this testimony with that given on his examination in supplementary proceedings, and no itemized statement is produced showing how this money was expended. This, however, is perfectly clear:

Neither the trustee for his children, nor his children themselves, have received anything up to the present time out of such dividends, notwithstanding the stocks, as he claims, were transferred to his son as trustee for their benefit, either in payment of or security for his indebtedness to them. The evidence also establishes conclusively that the purpose and intent of this transfer was to put these stocks in a po-

sition where he could have the beneficial enjoyment of the same, both principal and dividends, while his creditors were prevented from reaching any part thereof. A single transaction will illustrate that: Subsequently to the date of the transfer he offered for sale to one George M. Boardman 25 shares of the stock of the Brooklyn Chair Company, which had been included in said transfer, at the price of $4,-000. This was so much less than the value of it as claimed by the said defendant that he expressed to Boardman his opinion that by holding the stock for a short time he could sell it for sufficient to enable him to realize therefrom an indebtedness then due to him from the said defendant, amounting to $1,200 over and above the price which he had paid him for the stock. The complacent trustee seems readily to have acquiesced in this transaction, and made the necessary certificates of transfer of the stock to enable the same to be carried through. With the proceeds of the sale of this stock the defendant Frederick S. Cowperthwait went to the State Bank in Brownsville and paid off $4,000 of a personal note which he had given, which had been discounted by the bank, and was then about to become due.

There was a finding by the court at Special Term to the effect that the various stocks transferred by the insolvent debtor to his son were worth less than the amounts for which they had been hypothecated previous to the time of the transfer. To sustain these findings, it would be necessary that the evidence should conclusively establish that these stocks were worth at the time of the transfer far less than the par value thereof. Evidence tending to show that the stock of the Brooklyn Factory & Power Company was worth at the time of the transfer $258 per share was excluded, upon the objection of the defendants, although there is some testimony in the examination of the insolvent debtor in proceedings supplementary to execution that in his opinion it was forth easily $250 a share.

Seldom has a case been presented where the fraudulent purpose and intent of an insolvent debtor has been more clearly and conclusively established than is established by his own testimony in this case. When fraudulent intent on the part of an assignor is proved, and the purchaser has not parted with a valuable consideration at the time of the purchase, the burden of proof is then devolved upon the assignee to show his innocence in the transaction. Starin v. Kelly, 88 N. Y. 418; Bailey v. Fransioli, 101 App. Div. 140, 91 N. Y. Supp. 852; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; Wadleigh v. Wadleigh, 111 App. Div. 367, 97 N. Y. Supp. 1063. Not only is there an utter absence of any evidence tending to establish the innocence of the assignee, but, on the contrary, the evidence establishes his knowledge of the fraudulent intent of the assignor and his ready acquiescence and participation in the schemes of such assignor to accomplish his fraudulent purpose.

If such a transaction as this can be sustained, the provision of the statute to the effect that "every transfer of any interest in personal property, or the income thereof, and every charge on such property or income, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, * * * is void as against every person so hindered, de-

layed or defrauded" (Laws 1897, p. 511, c. 417, § 24), ceases to have any efficiency, and it were better to have it expressly repealed, 'than nullified by judicial determination.

The judgment appealed from should be reversed on the law and the facts, and a new trial granted; costs to abide the final award of costs. All concur.