A. E. YOUNGS, Respondent, v. GEORGE WEDDERSPOON, as Sheriff of Otsego County, Appellant.

(County Court, Otsego County, December, 1910.)

Fraudulent conveyance — Change of possession: Effect of failure to change possession: Sufficiency of change of possession.

Where the proprietor of a saloon, two days before the recovery of a judgment against him, sells the furniture and fixtures of the saloon, but there is no immediate delivery followed by actual and continued change of possession, the sign on the door of the saloon is not changed, the goods are left in the possession of the seller and no claim by the buyer appears that the business is his nor any evidence of the good faith and honest intention of the parties, the buyer may not recover against the sheriff for the sale of the goods under an execution issued upon such judgment.

APPEAL from a judgment rendered in a justice's court in favor of plaintiff.

B. W. Hoye, for appellant.

Byard & Van Horne, for respondent.

KELLOGG, J. This is an appeal from a judgment rendered in justice's court, in the town of Middlefield, in this

County Court, Otsego County, December, 1910.   [Vol. 70.

county, on the 15th day of June, 1908, in favor of the plaintiff for the sum of $200 damages, and $3.10 costs.

The action was commenced for the purpose of recovering articles of personal property of the alleged value of $200, consisting of pool tables, chairs, glasses, canned goods, liquors, cigars, pictures and furniture, which were in a certain saloon known as the Stone Jug in the village of Cooperstown, levied upon and sold by virtue of executions in favor of B. W. Hoye and Frank Pattridge, by the defendant, as sheriff of Otsego county.

It appears that one A. V. Bowne had been conducting this saloon for about three years and a half, and that he continued as proprietor of the same until April 30, 1908, the date of the expiration of the lease.   Some time prior to the 27th day of January, 1908, actions had been duly commenced by Hoye and Pattridge to recover the purchase price of supplies furnished to said Bowne, and were returnable on the twenty-eighth and twenty-ninth days of January, at which time each of said plaintiffs recovered judgment.

On the 27th day of January, one and two days, respectively, prior to the return day of the above causes, Bowne executed and delivered a bill of sale of the property in the saloon above described to his father-in-law, A. E. Young, this plaintiff, the consideration expressed therein being the sum of $200; and this bill of sale was filed in Otsego county clerk's office on the same day.   On the third day of February, following, executions were duly issued upon the judgments mentioned and placed in the hands of the sheriff, the appellant herein, who caused a levy to be made upon the articles of personal property mentioned, took possession of the same and sold the same at public auction by virtue of said executions on the sixth day of April, the sale thereof having first been forbidden by Young, he claiming title thereto under the said bill of sale.

The appellant contends that the alleged transfer was made with the intent to hinder, delay and defraud creditors, and is void as against Hoye and Pattridge, as creditors, and is also fraudulent and void as against them as judgment creditors.

It appears from the evidence that the respondent, Young, was the father-in-law of Bowne; and his testimony is that the conversation relating to the bill of sale took place at the saloon, and " that Bowne wanted to know if he would buy, and he said he would, and did make bargain for goods for the two hundred and paid the money and Bowne gave bill of sale."

Bowne, who was called as a witness for the plaintiff, testified that the pictures were hanging on the walls, pool tables were used, liquor decanters, cigars and canned goods were back of the bar and in the cases, and were in the same place they were on the 27th day of January. " I was in possession of the two copper work boards. The license was in my name until the 1st of May, and I had a lease from Mr. Wyckoff. My sign was up in my name, and beer signs. These were the only signs advertising the nature and proprietor of the business. I was there when the sheriff made the levy, in possession of the goods, and kept doing business until 30th of April."

Sheriff Wedderspoon, who was called as a witness by both of the parties, testified that he was present when the levy was made and the inventory of the goods taken, and that he found Bowne in possession and in charge; that all the goods claimed by the plaintiff were in their usual and customary place, in and about the saloon, and were being used in the business of operating it.

Thus, we have not only the evidence of the plaintiff's witness Bowne, but the testimony of the sheriff as well, that Bowne was in possession of the property at the time of the levy.

It is provided by section 35 of the Personal Property Law (Laws of 1909, chap. 45), " Every transfer of any interest in personal property or income, made with the intent to hinder, delay or defraud creditors or others of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, or decree or judgment suffered with such intent, is void as against every person so hindered, delayed or defrauded."

Again, it is provided by section 36 of this same statute:

" Every sale of goods and chattels in the possession or under the control of the vendor, and every assignment of goods and chattels by way of security or on any condition, but not constituting a mortgage nor intending to operate as a mortgage, unless accompanied by an immediate delivery followed by actual and continued change of possession, is presumed to be fraudulent and void as against all persons who are creditors of the vendor or person making the sale or assignment, including all persons who are his creditors at any time while such goods or chattels remain in his possession or under his control or subsequent purchasers of such goods and chattels in good faith; and is conclusive evidence of such fraud, unless it appear, on the part of the person claiming, under the sale or assignment, that it was made in good faith, and without intent to defraud such creditors or purchasers."

It has been held that none but established creditors of, and subsequent purchasers from, a vendor of chattels are allowed the benefit of this section, or permitted to allege fraud under this section, so as to invalidate a sale, valid as between the parties. Clute v. Fitch, 25 Barb. 428; Frisbey v. Thayer, 25 Wend. 396; Skilton v. Codington, 86 App. Div. 166. But this section (36) expressly includes among creditors those who are such at any time while the goods remain in the vendor's possession, or under his control. Stimson v. Wrigley, 86 N. Y. 332; Reynolds v. Ellis, 103 id. 115; Knight v. Forward, 63 Barb. 311; Wallace v. Nodine, 10 N. Y. Supp. 919.

No reason appears to have been assigned why the transfer of this property from Bowne to his father-in-law was made one day prior to the rendition of the judgment against Bowne, in the Hoye action, and two days prior to the rendition of the judgment in the Pattridge action. There is very little evidence in the case in relation to the transaction, nor does it appear that Bowne and his father-in-law stood in relation of debtor and creditor. Even in order to make a transfer from a debtor to a creditor valid, it is necessary that there should be a valid indebtedness, that the property be conveyed to secure the debt and be reduced to possession.

It is claimed by plaintiff that he paid Bowne $200 for the goods and stock, but not the slightest evidence appears in the case as to what became of the money or that Bowne paid any of his debts. It was incumbent upon the plain-tiff to show the *bona fides* of the sale, but there is no such evidence in the case.

It also appears, and is practically undisputed, that Bowne remained in possession of the saloon, in possession of the property, and conducted the business down to the expiration of his lease and license.

It has been said that an honest purchaser buys because he wants the property and its possession and, therefore, nat-urally and usually takes it. The absence of this fact indi-cates some purpose different from that of an honest pur-chaser — good faith and honest intention. The business continued in the name of Bowne, the goods were in and about the place the same at the time of the levy as they were at the time of the execution of the bill of sale, the sign was on the door, and no act or thing was done to inti-mate ownership in Young. There is no law which requires the filing of an unconditional bill of sale, but the statute does say that there must be an immediate and continuous change of possession of the things sold.

Continued use of property transferred by an insolvent debtor is a badge of fraud, and the absence of any evidence of transfer, purchase or control indicates some purpose dif-ferent from that of an honest purchaser, and requires proof of good faith and honest intention. Hickok · v. Cowper-thwait, 134 App. Div. 620.

The sale must be accompanied by actual and continued change of possession as well as by a nominal and con-structive change. The burden of showing this is on the plaintiff. No such evidence appears in this case, nor evi-dence from which the justice before whom this cause was tried could have found such a question of fact in favor of the plaintiff. Siedenbach v. Riley, 111 N. Y. 568.

It was held in Sjoberg v. Field, 50 Misc. Rep. 412, that, in an action to set aside a bill of sale made by defendant to his mother, the plaintiff was entitled to judgment, it appear-

ing that the mother left the son in full possession and control of the property after the bill of sale had been made, executed and filed, and the son continued to conduct the business as before, merely adding the word " agent " to his name.   A similar case to this is found in Rheinfeldt v. Dahlman, 19 Misc. Rep. 163, where one brother purchased of another a butcher shop, and it appeared the vendee left the vendor in charge of the market, but went further than this plaintiff did.   He called at the market early mornings and again in the evening, taking the cash and closing the store. McAdam, J., in his opinion says: " These facts do not establish the actual and continued change of possession contemplated by the statute.   To take the case out of the statute the acts of the parties must have been of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer, and the change of possession necessarily is an open and public one, which is to continue and be manifested by outward and visible signs, such as to render it evident that the possession of the judgment debtor has ended, for he must cease from his apparent as well as real ownership."

The immediate delivery followed by actual and continued change of possession, required by the statute to prevent the creation of the presumption of fraud, has been construed and declared by the courts to mean the actual delivery and open public change of possession, to be continued and manifested by outward and visible signs, such as render it evident that possession and the apparent as well as the real ownership of the vendor is ended.   Allen v. Gray, 115 N. Y. Supp. 931.

While it is true that a change of property made in good faith to secure an antecedent debt is not necessarily fraudulent, the mere proof that it was so given does not, as a matter of law, disprove the existence of fraudulent intent on the part of the debtor.   This is clearly so when other circumstances exist which indicate the real purpose of the transfer was to hinder creditors in the collection of their just claims, and enable the assignor or vendor to still control and make use of such property for his own benefit. Cole v. Tyler, 65 N. Y. 73; Coleman v. Burr, 93 N. Y. 71.

The use that is made of assigned property and the acts of the parties to such an assignment, in connection with it, furnish valuable data to judge of the motive and intent with which it was executed. Forbes v. Waller, 25 N. Y. 430.

The bill of sale was not accompanied by an immediate delivery followed by actual and continued change of possession. The sign on the door was not changed; the goods were left in the possession of the vendor; no claim was made by the plaintiff that the business was his to any one and there is no evidence in the case of the good faith and honest intention of the parties. The conclusion, therefore, is irresistible, that the entire transaction was a mere contrivance to save this property from the lien of judgments about to be rendered in favor of Hoye and Pattridge and to hinder and delay them in the collection of just and honest obligations. It follows that the judgment recovered by this plaintiff herein should be reversed.

Judgment reversed, with costs.