NEW YORK ICE CO. v. COUSINS et al.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

1. FRAUDULENT CONVEYANCE—EVIDENCE.

In a creditors' action it appeared that one of the defendants, the debtor, who owned an ice business and property employed therein, gave a chattel mortgage and bill of sale thereof to his brothers, and for a week thereafter remained in possession of the property, conducted the business, and appropriated the proceeds to his own use, and concealed the fact of the transfers. The sole evidence of good faith was the uncorroborated testimony of the debtor, and of his brothers, who were employed by him, at $12 a week, to drive his ice wagons, that he owed them more than $5,000, which they had loaned to him. Upon a review of the evidence, held, that the presumption of fraud was not rebutted.

2. SAME—BONA FIDE GRANTEE.

A transfer of property may be void, as intended to hinder, delay, and defraud creditors, even though the person to whom it is made is a bona fide creditor.

3. SAME—NOTICE TO GRANTEE.

The payment of a valuable consideration does not protect a purchaser of goods who takes with notice of the fraudulent intent of his immediate grantor to hinder, delay, and defraud creditors.

4. ADVERSE WITNESS—WEIGHT OF EVIDENCE.
   Where, in a creditors' action to set aside a sale on the ground of fraud, the plaintiff calls as witnesses the vendor and vendee, their testimony should be treated as though the facts elicited from them, and favorable to the defendants, had been called out by themselves, while the unfavorable facts are in the nature of a cross-examination by the plaintiff.

5. APPEAL—REVIEW—WEIGHT OF EVIDENCE.
   Where the advantage possessed by the trial court in observing the demeanor of witnesses is of minor importance, and the proper conclusion turns rather upon a careful consideration of many facts and circumstances, the appellate court should exercise freely its power to review and reverse on the facts.

   Rumsey and Van Brunt, JJ., dissenting.

Appeal from special term, New York county.

Action by the New York Ice Company against Almus M. Cousins and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Herbert H. Gibbs, for appellant.

W. B. Donihee, for respondents Cousins.

Wm. H. Rand, Jr., for respondent Consolidated Ice Co.

BARRETT, J.   Practically, the undisputed evidence shows that after the bill of sale by Almus M. Cousins to Richard Cousins, on July 23, 1896, the former remained in possession of the property for a week, conducted the business, and appropriated its proceeds to his own use.   This raises a presumption of fraud in the sale, which becomes conclusive, unless, to quote the statute (2 Rev. St. p. 136, § 5), "it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith and without any intent to defraud such creditors or purchasers." No evidence was given by the defendants to rebut this presumption, as the complaint was dismissed at the close of the plaintiff's case.   The learned trial judge distinctly ruled, immediately upon the plaintiff's resting, that the burden was upon it to prove that the vendee was not a bona fide creditor of the judgment debtor. and the dismissal was upon that specific ground, or, to use the learned judge's own language, for that "particular reason."   This ruling was emphasized in the short decision which he subsequently made and signed.   The presumption of fraud was entirely ignored in this decision; and the undisputed testimony, that there was no immediate delivery or change of possession, was held to be no evidence of an intent to hinder, delay, and defraud creditors.   The decision thus rested upon an erroneous view of the law, which doubtless pervaded the consideration of the testimony, and of the entire case.   Indeed, this must be so, for it is clear that the testimony adduced by the plaintiff did not rebut the presumption of fraud, and the learned judge nowhere found or intimated that this testimony sufficed to establish good faith and the absence of an intent to defraud.   What he clearly held was that it did not affirmatively show bad faith and an intent to defraud.   He

apparently overlooked the presumption, and thus reversed the burden of proof.

It appears, however, that the plaintiff called the vendor and vendee as witnesses, and the respondents now contend that thereby it performed for them the office of rebutting the statutory presumption. Their claim is that the testimony of these witnesses "made it appear on their part" that the sale was in good faith, and without an intent to defraud.    Without considering whether this inversion of the order of proof, contemplated by the statute, is admissible, we think that, to say the least, the testimony in question should have been treated as though the facts elicited from these witnesses favorable to the defendants had been called out by themselves, while the unfavorable facts were in the nature of a cross-examination by the plaintiff.    In discussing the rules governing the examination of adverse witnesses, the court of appeals, in Becker v. Koch, 104 N. Y. 401, 10 N. E. 701, approved of Mr. Starkie's doctrine (Starkie, Ev. [9th Ed.] marg. p. 248), and summarized it as follows:

"What favorable facts the party calling him obtained from such a witness may be justly regarded as wrung from a reluctant and unwilling man; while those which are unfavorable may be treated by the jury with just that degree of belief which they may think it deserved, considering their nature and the other circumstances of the case."

Looking at the testimony of Almus M. Cousins (the vendor) and of Richard Cousins (the vendee) in the light afforded by this wholesome rule, we think it entirely clear that a prima facie case of fraud was still made out when the plaintiff rested.    As in Becker v. Koch, the plaintiff here called the very men accused of the fraud, as witnesses to prove it.    These men proved beyond peradventure the primary fact which raised the presumption of fraud.    The question, then, is, did they, by their further testimony, rebut that presumption, and avert its statutory conclusiveness?    Whether that further testimony was elicited by the one side or the other is of no consequence so far as this latter question is concerned.    Once the presumption of fraud had arisen, the burden of proof was shifted, and any further testimony tending to establish innocence was affirmative and necessarily related to that burden.

The language of Judge Peckham in Becker v. Koch is again in point.    At page 402, 104 N. Y., and page 704, 10 N. E., that learned judge observed:

"The defendant calls the very man he accuses of the fraud as a witness to prove it, and says, in effect, to the jury, that such evidence as the witness gives which tends to show the perpetration of the fraud alleged is forced from him by the exigencies of the case and the surrounding facts, which cannot be denied; while that which he gives that looks towards an explanation of the fraud the jury shall give such faith to as, under all the facts in the case, they may think it entitled to."

How, then, did the vendor and vendee in the present case make it appear that, notwithstanding the statutory presumption, the sale was made in good faith, and without an intent to defraud?    Solely by the bald statement, which is almost invariably forthcoming in this class of cases, that the bill of sale was given to satisfy, and the mortgage to secure, bona fide debts, due by the vendor, Almus, to his

three brothers, Richard, John, and Harvey. A lump sum was tes-
tified to as due by him to each of these brothers, the totality being
quite sufficient to exhaust every scrap of his property. This testi-
mony is unsupported by a particle of corroborative evidence, while
the facts and circumstances which these witnesses were compelled
to give in detail point unerringly to its falsity. The debtor, Almus,
was in the ice business, and these brothers were in his employ as
drivers of his ice carts, their wages being but $12 per week. Yet the
pretense is that these brothers, although even their meager wages
were paid most irregularly,—were in fact from time to time largely
in arrears,—managed in some undisclosed manner to save and lend
to their brother employer large sums of money, amounting in the
aggregate to over $5,000. Where did all this money come from?
The answers of the witnesses were scarcely serious. Richard ac-
counted for his share in part by this statement: "I worked and
earned money from the time I was born." There was also a vague
suggestion that Richard had received some money from his father,
but no substantial fact on that head was stated. In fact, nothing
whatever which could be analyzed or tested was shown as to the
sources of their means. The case is still worse as to data. Not a
scrap of paper was produced in support of Almus' most improbable
story. No entries of the loans appear in any of his books. No re-
ceipts were given; no memoranda made. Almus said that at one
time he kept an account of the moneys that he owed in a book, but
that the book "was lost." Apparently, Richard kept no bank book
while he claims to have been making these loans, nor did John or
Harvey. There is, at all events, no pretense that the loans were
made by check; and no check was produced or mentioned. In fact,
all the transactions were kept, so these people say, substantially in
their heads. The only suggestion they make of anything approach-
ing to a writing is that occasionally, when the indebtedness became
so large or complex as to tax their memories, they summed up what
was due, and took a note from Almus for the lump sum. Here
again, however, all investigation is baffled, for, the moment the bill
of sale was given, all these notes were promptly destroyed.

Almus owed his concededly genuine creditors at the time of these
transfers about $9,500. These creditors were pressing him, and,
when he found he could put them off no longer, he and his broth-
ers got together, and determined upon a transfer of the property.
They then put the matter in the hands of a lawyer, who prepared the
necessary papers. They seem, however, to have had no clear idea
of the nature of these papers. They left it all to the lawyer, and
simply gave him instructions to effectuate their purpose in a legal
manner. That purpose, plainly, was to place some kind of formal
barrier between Almus' creditors and his property. So little did Rich-
ard know of the very papers which were signed and delivered that he
testified over and over again that he gave the mortgage to John and
Harvey. It was only when the real fact, namely, that Almus gave
the mortgage, was pointedly referred to by the defendants' counsel,
that Richard seemed to realize his mistake. It was proved, too, be-
yond dispute, that, after the alleged sale, people who came to pur-

chase the property from Richard were referred to Almus. Others were told that there was no mortgage upon the property; that, in fact, it was free and clear. Creditors were put off by Almus after the sale, just as they had been put off before with false promises of payment. The fact of the sale was concealed for days, while creditors were permitted to go on demanding their money. Both brothers continued to act as though Almus was still the owner, and quite as though the creditors would soon be paid. The object, of course, was to allay suspicion, and to gain time to secure what could be got out of the business before the creditors commenced their inevitable attack. Thus, we find throughout the usual indicia of fraud. As against these marked indicia, we have nothing save the bare statements of the debtor and his brother that the one owed the other money. Every fact and circumstance in the case tends to falsify these statements. Every such fact and circumstance, too, tends to show that, even if these debts really existed, still the intent was to hinder, delay, and defraud Almus' creditors; and that intent is sufficient to avoid the sale. Billings v. Russell, 101 N. Y. 226, 4 N. E. 531. The case against the bill of sale was therefore made out at least prima facie. But the case against the mortgages is in some respects even stronger. It may be said that it was proper for Richard to surrender to Almus the notes that he held, for the reason that the transaction as to him was a sale, and that thus the indebtedness was extinguished. In the case of the mortgage, however, no such view can well be taken. The mortgage was given to secure, not to extinguish, the indebtedness; and it is inconceivable, if the transaction was honest, that the mortgagee should have surrendered to the mortgagor the evidence of indebtedness upon which his security substantially rested. The surrender of these particular notes and their immediate destruction by fire, in view of the mortgagee's knowledge of Almus' insolvency, and of the probability that the mortgage would be questioned by creditors, are certainly striking badges of fraud.

It seems to us, upon all the facts, that this is an extreme case for the exercise by this court of its power to review and reverse upon the facts,—a power which it has at times been criticised for not exercising with sufficient frequency. Smith v. Insurance Co., 49 N. Y. 216; Kaare v. Iron Co., 139 N. Y. 369, 376, 377, 34 N. E. 901. It is true that questions of fact are primarily for the trial court, and that a trial court possesses a certain advantage over an appellate court by reason of its opportunity of seeing the witnesses. In some cases, however, this consideration is entitled to much less weight than in others. Where there is simply a question of veracity, without other means of arriving at the truth, the greatest weight should be accorded it. But there are other cases where the truth must be ascertained by a careful consideration of many facts and circumstances. In such cases the demeanor of the witnesses is not necessarily of controlling importance. Indeed, when the complaint in an equity action is dismissed. immediately upon the plaintiff's resting, an appellate court is frequently in a better position than the trial court to pass upon all questions of fact not specially affected by the demeanor of the witnesses. The appellate court can examine the

printed record at leisure, carefullly collate fact with fact, and thus often get a clearer view of the situation than could have been obtained upon the summary disposition of the case below. We concede, of course, that the weight due to testimony by reason of a witness' personality can only be judged by the trial court. Not so, however, of the force and effect of the attendant circumstances, which often speak more persuasively than words, and which cannot be gainsaid because of a witness' manner or expression of countenance. The solution of the questions of fact in this case in the main depends upon the consideration of facts and circumstances, not at all upon the personal atmosphere of the witnesses. We think such consideration is so destructive of the force of the defendants' testimony that it cannot reasonably be said that they have successfully met the burden put upon them by the statute. They may have looked the very embodiment of truth and honesty, but their acts and declarations belied them. For this court to refuse to reverse in such a case would, in our judgment, be, in effect, to abnegate its functions as a court of review upon the facts.

There should also be a reversal as to the defendant the Consolidated Ice Company. The payment of a valuable consideration did not protect this company if it had previous notice of the fraudulent intent of its immediate grantor. 2 Rev. St. c. 7, tit. 2, § 5. It had such notice. The plaintiff's manager, one Eddy, fully warned the company's assistant secretary, Reeve, of the fraud about to be practiced, telling him, among other things, that the plaintiff believed that both the mortgage and the sale of the property were fraudulent transactions, and made in order that the Cousins might dispose of the property without paying their just debts, especially to the plaintiff. This was not an expression of opinion. It was a direct assertion of a fact, namely, of a fraudulent intent in the making of the bill of sale. It warned the company's officers directly of this fact. If they did not then, as they readily might, satisfy themselves of the validity of their vendor's title, they must bear the consequences. We think they had actual notice within the rule, as laid down in Stearns v. Gage, 79 N. Y. 102, and Parker v. Conner, 93 N. Y. 118.

We think, therefore, that the judgment should be reversed as to all the defendants, and a new trial ordered, with costs to the appellant to abide the event.

WILLIAMS, J., concurs.

PATTERSON, J. I concur, on the ground that the general testimony of the inculpated defendants was not sufficient to overcome the presumption of fraud in the execution of the instruments attacked in this action.

RUMSEY, J. (dissenting). This is a judgment creditors' action, brought to set aside a transfer and mortgage of personal property made by Almus M. Cousins to his brothers, which property was subsequently sold to the respondent the Consolidated Ice Company. Upon the trial at special term, the court dismissed the complaint, upon the

ground that the plaintiff had not made it appear that the bill of sale
and mortgage were made with the intent to hinder, delay, or defraud
the creditors of Almus M. Cousins; the particular reason being that
it had not been shown that the transferee in the bill of sale and the
mortgagees in the mortgage were not bona fide creditors of Almus M.
Cousins.   To this decision an exception was filed, and, after judgment
had been entered dismissing the complaint, this appeal was brought.

The question presented is purely a question of fact.   By section
1022 of the Code of Civil Procedure, that question of fact is entirely
open for review by the appellate division, and the case is to be de-
termined by this court upon an examination of the facts.   But, while
the facts are to be examined by this court, it is not to be forgotten that
the court at the special term had the opportunity of seeing the wit-
nesses, and of observing the manner in which they gave their testi-
mony, which is of great service in enabling it to decide correctly as
to the weight to be given to the testimony of each witness who per-
sonally appeared before it.   In view of the great advantage thus
afforded to the trial court, the presumption arises that its decision
upon a question of fact is the correct one, and no presumptions are to
be indulged in against it; but, on the contrary, if any presumptions
are to be made, they are to be made in support of the judgment.
Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751.   While it is our
duty to examine the evidence. and form a conclusion for ourselves
upon it, yet in such an examination this presumption must not be
overlooked.   The case was decided at the close of the plaintiff's ev-
idence.   There had been sworn as witnesses for the plaintiff, not only
persons who were friendly to it, but also Almus M. Cousins, the judg-
ment debtor, who made the alleged fraudulent transfer, and his
brother Richard Cousins, who received it.   The testimony given by
these men was to the effect that the transfer to Richard and the mort-
gage to John and Harvey were made in payment of a bona fide debt,
and, if their testimony was to be believed, there was no escape from
the conclusion that the assignee and the mortgagee were actual cred-
itors of their brother Almus, and that they were entitled to receive
the property from him by reason of the debts which he owed them.
It is said by the appellant that the plaintiff is not bound by their tes-
timony, and to that proposition he cites the case of Becker v. Koch,
104 N. Y. 394, 10 N. E. 701.   In that proposition he is correct, but
the cases are very rare in which a person who puts a witness upon
the stand is bound by his testimony.   It is undoubtedly the rule that
such a person cannot discredit his witness by impeaching his char-
acter or proving contradictory statements made by him for the sole
purpose of showing that he is unworthy of credit; but he is never
precluded from showing that the facts testified to by his witness are
not the true facts of the case, or from establishing the truth of the
transaction, however strongly his own witness may have sworn to
something which was not the truth.   In such a case as this, where
the plaintiff has put his adversary upon the stand, he is at liberty,
without regard to what his adversary swears, to prove the facts, and
he is at liberty to insist that the testimony of his adversary is not
true.   But he is not at liberty to insist that the court shall not ex-

amine the testimony, and give it such weight as it appears to be entitled to, and, if it believes it, find the facts as sworn to by the witness whom the plaintiff has put upon the stand, although that witness is interested against him. It must not be forgotten that in cases like this, where the sole question is one of fact, the plaintiff is not necessarily entitled to that interpretation of testimony which is most favorable to him. Where the court is called upon to decide a proposition of law, claimed to arise upon a certain set of facts, the person against whom the ruling is asked is entitled to that interpretation of the facts which shall be most favorable to his contention; but where the court is called upon to determine the truth of a question of fact in any stage of the trial, for the purpose of deciding the case, it should examine all the testimony, and conclude as to the truth of the fact, in precisely the same way as though the case had finally been submitted to it for determination. In considering this case, the serious question to be determined is whether, upon all the facts, Almus M. Cousins was at the time of the transfer to his brothers actually indebted to them, as he claimed to be. If he was so indebted, then, undoubtedly, it was perfectly competent for him to transfer to them a sufficient amount of his property to pay those debts, although he thereby put it out of his power to pay his other creditors; and, if his object was only to pay the debts which he actually owed to his brothers, the transaction was not fraudulent as to the other creditors. Hoffman v. Susemihl, 15 App. Div. 405, 44 N. Y. Supp. 52. The testimony of Almus Cousins and his brother Richard was the only evidence upon that subject given upon the trial. There was at hand evidence of the brothers John and Harvey, and also of the attorney Mr. Boynton, who drew the bill of sale and the mortgage. There was no reason why the plaintiff should call these persons, and the defendants had no opportunity to do so, because the case was closed before the defendants were put to their proof. For that reason no presumption can arise against either party because these witnesses were not called. Especially is there no presumption against the defendants that the testimony of these witnesses would have been adverse to them because they had no opportunity to call them.

It is quite true that the two Cousins were interested in the result of the suit, and that interest must be taken into consideration. But there was no direct evidence in the case to impeach the testimony which they gave as to the consideration for the transfers. It is claimed, however, by the plaintiff, that their testimony should be discredited. It may be conceded that there were some circumstances which would afford ground for suspicion as to the existence of the debts for which these transfers were made. An attempt was made by the defendants upon the stand to explain these circumstances, and, if their statements were true, the explanation was sufficient. Whether it was to be believed or not depended almost entirely upon the appearance of the witnesses and the manner in which they gave their testimony; and that was before the trial judge, and his conclusion upon that point is entitled to great weight.

It is said that the transfers were made fraudulent, by the provisions of the statute of frauds; that every sale made by a vendor of

goods and chattels in his possession or under his control, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith, and without any intent to defraud such creditors. 2 Rev. St. p. 136, § 5. The rule laid down in this section does not apply to the mortgage given to John and Harvey Cousins, because it appears that that mortgage was properly filed as a chattel mortgage on the day after it was given, and therefore, so far as those persons are concerned, they are not within the condemnation of this statute. But as to Richard Cousins it does appear that the arrangement between him and his brother was that the possession of the property which was sold to him on the 23d of July should not be transferred to him until the 1st of August, and that he did not go into possession of that property until that time. Undoubtedly, when that agreement was made to appear, the presumption of fraud arose; but it was not necessarily a conclusive presumption, but the question still remained whether the sale by his brother to him was made in good faith, and without any intent to defraud the creditors. That was a fact to be decided upon a consideration of all the testimony which had been given in the case, and certainly there was sufficient testimony to warrant the court in holding that the transfer by Almus to his brother was made upon sufficient consideration, and was made for no other reason than to pay the debt which Almus owed. Of course, there is testimony tending to support the presumption of fraud; but the question is a question of fact, and, if the testimony of the two defendants is to be believed, the delivery of possession was postponed for a sufficient reason, so that the presumption of fraud is repelled.

It is not necessary to recite the testimony by which we are brought to the conclusion thus announced. To do so would extend this opinion to too great a length. It is only necessary for us to say that, upon a careful reading of the testimony, we are of the opinion that the finding of the court at the special term was not unwarranted by the evidence, and that the plaintiff failed in its effort to prove that the transfer was made with the intent to defraud creditors, and for that reason the judgment must be affirmed, with costs.

VAN BRUNT, P. J., concurs.