YOUNG v. UPSON.

(Circuit Court, S. D. New York. May 8, 1902.)

1. BANKRUPTCY—PREFERENCE—SECURITY FOR PRESENT LOAN.
    The transfer by a merchant of notes and accounts as collateral to secure the repayment of a present loan does not create a preference, within the scope of the bankrupt act.[1]

2. SAME—PRESUMPTION OF FRAUD—CHOSES IN ACTION—GOODS AND CHATTELS—MODE OF TRANSFER.
    Choses in action are not "goods and chattels," within the contemplation of Laws N. Y. 1897, c. 417, art. 2, § 25, providing that every assignment of goods and chattels by way of security, not constituting or intended to operate as a mortgage, unless accompanied by an immediate delivery followed by actual and continued change of possession, is presumed to be fraudulent and void as against the creditors of the vendor; and a transfer of choses in action on the books of the assignor, to secure a present loan, is not presumed to be fraudulent under such act.

3. COLLATERAL SECURITY—BILLS RECEIVABLE—MODE OF TRANSFER.
    Where, on the transfer of bills receivable as security for a loan, the borrower opened a separate account of such bills on his books, and as

---

[1] See Bankruptcy, vol. 6, Cent. Dig. § 259 [b, c, d, p, q].

fast as collected the proceeds were paid to the lender, and all questions of renewal and extension were referred to him, the transfer was complete and effectual.

**4.** SAME—NOTICE TO DEBTORS.

Where accounts and bills receivable are transferred as collateral security for a loan, notice to the debtors is not necessary to make the transfer effectual as against the creditors of the borrower.

**5.** SAME—APPLICATION OF PROCEEDS.

Where, under an agreement to loan to a merchant the money he should need during a certain season, the loan to be secured by the transfer of notes and accounts, and the money to be advanced from time to time as the needs of the business required, money was advanced at divers times, and each time a note given for the amount, and indorsed with a list of accounts, and notes then assigned as security, the sums so advanced should be taken as a continuous transaction, as between such lender and the trustee in bankruptcy of the borrower, and the net proceeds of such notes and accounts, when collected, should be first applied to the payment of the note for which they stood as collateral, and any excess applied generally on the indebtedness, until the full amount of the loan is repaid.

In Equity.

Wm. Raimond Baird, for complainant.
William F. Scott, for defendant.

HAZEL, District Judge. Defendant and cross claimant, as trustee in bankruptcy of the New York China, Glass & Toy Company, a corporation, withholds from complainant the proceeds of certain accounts paid by debtors of the bankrupt to him as trustee. These collections were made subsequent to assignments by the bankrupt corporation to complainant of these same accounts and claims. The assignments were taken by complainant as collateral security for the payment of loans and advances made to the bankrupt corporation by complainant pursuant to an agreement entered into with the president of the corporation early in September, 1899. The fund created by such collections passed into the possession and control of an assignee of the corporation for the benefit of creditors on December 30, 1899, and subsequently came into the possession and control of the trustee in bankruptcy appointed on March 15, 1900. Thereafter, pursuant to an order of this court, the fund was deposited by the trustee in the Colonial Trust Company, to the joint account of the complainant and defendant, pending a decision of this controversy. The suit is brought in equity by this secured creditor of the corporation to determine the ownership and control of the fund and the rights of complainant under and by virtue of the various assignments in writing made to him as collateral security. The corporation was adjudicated bankrupt in involuntary proceedings instituted by creditors on January 11, 1900. The undisputed proofs show that in the autumn of 1899 the New York China, Glass & Toy Company (which will hereafter, for convenience, be referred to as the "Company"), being unable to borrow from banks the necessary amount of money to prepare for its fall trade on account of a false report printed in a newspaper as to its financial condition, applied to the complainant, brother of the president of the company, for loans and advances to meet its merchandise

account and current expenses during the fall months. The nature of the company's business was such that the principal portion of its sales was made in the fall and early winter, and payments upon such sales were made in most instances after the holiday season. The stringency of its finances produced by the refusal of the banks to accept its collateral resulted in the board of directors of the company authorizing its president to borrow money of the complainant, and to secure repayment by assignments of bills receivable as collateral security. The company was then to collect the assigned accounts as agent for the lender, and without expense to him. Subsequently, at different times between September 16 and December 18, 1899, complainant loaned and advanced to the company various sums, to secure which he exacted and received demand notes for each amount loaned, together with assignments in writing of bills receivable as collateral security. Appended to each note was a list of claims or accounts assigned. The amounts varied from $1,000 to $3,000, and aggregated $53,700. The collateral is estimated to have been 25 per cent. in excess of the loan. It further appears from the evidence that as soon as each account was assigned it was transferred on the ledger of the company to an account designated "Security Account." That was done to distinguish such accounts on the company's books from accounts not assigned. As soon as an assigned account was collected, the proceeds were paid to complainant to apply on the loan. Extensions of time of payment and renewals were referred to complainant for his approval or disapproval.

The transaction is admitted to be free from actual fraud or deceit. It was not seriously contended on the hearing that a preference was created by the act of transfer. A preference, within the scope of the bankrupt act, is created when it shall be given within four months of filing petition, and when the person receiving it has reasonable cause to believe it was intended to give a preference. We have no such claim here. The security was given for a present consideration, and therefore no fraud on creditors, under the bankruptcy act. In re Wolf (D. C.) 98 Fed. 84; In re Soudan Mfg. Co. (C. C. A.) 113 Fed. 804. It does not appear that either the company or the complainant at the time the loans were made had any knowledge of the company's insolvency. The company was always a large borrower at that season of the year, and had ample reason for believing that the holiday trade would insure its commercial stability. The complainant was acquainted with the business of the corporation, and knew of the company's customary financial needs at that season of the year.

The trustee contends that the transaction was in the nature of a pledge, and, as no possession of the property pledged passed, the pledge is not enforceable against creditors; that, although no actual fraud or deceit is charged, the transaction nevertheless was a fraud in law; that the essence of the transaction is presumed to be fraudulent and void as against the trustee representing creditors, as there was no delivery to the pledgee of the property pledged. It is insisted that the "Personal Property Law" applies. Laws N. Y. 1897,

c. 417, art. 2, § 25. I am convinced that a fair construction of the statute, as construed by the highest court of the state, does not include an assignment of a chose in action. The courts of the state of New York have repeatedly declined to read into the statute an intention which does not come within the scope of the words "goods and chattels," used in chapter 279 of the Laws of 1833. It was accordingly held that the words "goods and chattels" do not include choses in action, but only personal property which is visible, tangible, and movable. Booth v. Kehoe, 71 N. Y. 341; Bank v. Chaskin, 28 App. Div. 315, 51 N. Y. Supp. 64, and cases cited. Justice Spring said in his dissenting opinion in Stackhouse v. Holden, 66 App. Div. 423, 73 N. Y. Supp. 203:

"The fraud which vitiates the transfer does not consist in the failure to deliver possession of the assigned accounts to the defendant, for choses in action are not the goods and chattels covered by the statute condemning sales unaccompanied by delivery over of the property."

The controlling opinion in the case last cited seems to be decisive of this question. The agreement in that case was that the assignor should collect the assigned accounts, and deposit the proceeds in a bank to their credit. I quote from the opinion, which aptly applies:

"The rules pertaining to a change of possession of goods and chattels upon a sale thereof, or to the filing of a lien thereon, and the dominion required to be exercised by a purchaser, mortgagee, or pledgee of tangible property, cannot be applied to a sale or pledge of indebtedness, intangible of itself, only the evidence of which, if in writing, is perceptible. The conditions are not the same, and the rules of law applicable to transfers of the two classes of property differ. As to one the possession of which is evidence of ownership, the dealings must be open, visible, and public; while as to the other the business may be, as it usually is, private. The necessities of business require it. Aside from the provision of the bankrupt law prohibiting preferences, and subject to the rules of law relative to transfers of goods and chattels, debtors may transfer and pledge their personal property to their creditors in any manner they see fit, and any attempt to apply fixed rules for the transaction of the business would interfere with this undoubted right."

I am unable to perceive how a pledge of bills receivable could have been transferred more effectively in the absence of a statute requiring notice to be given than was actually done in the case at bar. Separate accounts were carried on the books of the company. The proceeds of accounts collected were immediately paid to the lender. Requests for renewal notes and extension of time of payment were referred to complainant for his decision. His right of possession is as fully demonstrated as the nature of the security would permit. But it is contended that it is essential to the validity of the transfer that notice should have been given to the debtors whose claims were assigned. This contention is unsound. The necessity for notice by an assignee to the debtor arises where he seeks to protect himself against a payment by the debtor to the original creditor. The debtor is released from liability to the assignee unless he has been notified of the assignment. Richardson v. Ainsworth, 20 How. Prac. 521; Heermans v. Ellsworth, 64 N. Y. 159; Williams v. Ingersoll, 89 N. Y. 522. It is fully established by authority that complainant could legally authorize the company as agent for him to collect the assigned claims and accounts. Clark v. Iselin, 21 Wall. 360, 22 L.

Ed. 568; White v. Platt, 5 Denio, 269; Institution v. Adae (C. C.) 8 Fed. 106; Stackhouse v. Holden, 66 App. Div. 423, 73 N. Y. Supp. 203.

Since the argument of this case counsel request that I pass upon the question of a method of application of the collateral. I think that the various sums advanced must be taken as a continuous transaction. The proofs justify that conclusion. The president of the company informed complainant at the time arrangements for the loan were perfected that the company needed from $20,000 to $30,000, "not all at once, but as the business needs required." For this reason I am of opinion that the claims paid must first be applied to the payment of the note for which they, stand collateral. Any excess may then be generally applied on the indebtedness, including expenses incurred by complainant for collecting accounts after failure of the company. Unless the parties agree on amount of such expenses, an account will be taken by a master.

A decree may be entered accordingly, with costs.