## WALLACE BENEDICT, RECEIVER, v. RATNER.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 11. Argued October 5, 1923.—Decided May 25, 1925.

1. By the law of New York a transfer of property, as security for a debt, which reserves to the transferor the right to dispose of the property or to apply its proceeds for his own uses, is fraudulent and void as to creditors. P. 360.

2. This rule applies to the assignment of present and future book accounts as well as to assignment of chattels, since it does not result from the retention of ostensible ownership by the assignor, but from the fact that the reservation of dominion by him is inconsistent with the effective disposition of title and creation of a lien. P. 361.

3. *Held* that an assignment made by a mercantile corporation, more than four months before it was adjudged bankrupt, of its present and future accounts receivable as security for a loan, was void under the above rule, so that delivery of a list of accounts, and payments made within the four months, were inoperative to perfect a

lien in the assignee, but were unlawful preferences, under the Bankruptcy Act. P. 364.

282 Fed. 12, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals which affirmed an order of the District Court requiring a receiver and trustee in bankruptcy to pay over money collected from accounts receivable to a creditor of the bankrupt claiming them as security under an assignment, and denying the trustee's petition that the creditor be required to pay over collections made by him under the assignment.

*Mr. Selden Bacon,* for petitioner.

A contemporaneous agreement that, despite an assignment of property as collateral security to secure the assignee for a debt due him from the assignor, the assignor may continue to use and dispose of the property as his own, retaining and using the proceeds in his business, without accounting therefor in any way to his assignee, renders the assignment fraudulent and void as against creditors, not only in the case of ordinary chattel mortgages but also in the case of assignments confined to accounts receivable. *In re Leslie-Judge Co.,* 272 Fed. 886; *Russell v. Winne,* 37 N. Y. 591; *Skilton v. Codington,* 185 N. Y. 80; *Griswold v. Sheldon,* 4 N. Y. 581; *Southard v. Benner,* 72 N. Y. 424; *Zartman v. First Natl. Bank,* 189 N. Y. 267; *In re Volence,* 197 Fed. 232; *Robinson v. Elliot,* 22 Wall. 513.

Cases implying that the rule is not based on any appearance growing out of possession but on the fraudulent character of the arrangement, we find in abundance. See cases above cited, and *Wood v. Lowry,* 17 Wend. 492; *Edgell v. Hart,* 9 N. Y. 213; *Vilas Bank v. Newton,* 25 App. Div. N. Y., 62, 66; *Mittnach v. Kelly,* 3 Abb. Ct. App. Dec. 301; *Gardner v. McEwen,* 19 N. Y. 123; *In re Marine Construction Co.,* 144 Fed. 649; *Worrall v. Smith,* 1 Camp. 322; *Paget v. Perchard,* 1 Esp. 205.

The decisions in *Sexton* v. *Kessler,* 225 U. S. 90, and in *Chapman* v. *Hunt,* 254 Fed. 768, in no way conflict with the rule we invoke.

Even were the rule predicated on a false appearance of ownership, the facts here supply the equivalent, and more than the equivalent, of any false appearance of ownership arising from possession of tangibles. There was the actual appearance of ownership deliberately preserved and sustained, and deliberate concealment of the assignment to avoid the obvious and contemplated consequences of disclosure of the fact of the assignment of all receivables present and future.

If the assignment was galvanized into actuality by Ratner's taking over the checks as they came in, during the last week before the bankruptcy, that galvanization process went no further than his actual receipts of about $12,000, and the decree for further payment to him of some $18,000 is erroneous. Moreover as to the $12,000 the transaction was preferential. The main question presented is of the utmost importance to the business community and to the administration of the Bankruptcy Act.

*Mr. Louis S. Posner,* for respondent.

An assignment of property to be acquired thereafter operates by way of present contract to give a lien which, as between the parties, takes effect and attaches to the subject of it as soon as it comes into the ownership of the assignor. Such lien becomes perfected and ripens into a right at law which is enforcible against third parties if, after the property is acquired, the assignee take possession thereof prior to an execution or attachment levy thereon, or the like, by third parties, or the appointment of a receiver upon the filing of a petition in bankruptcy by or against the assignor. *McCaffrey* v. *Woodin,* 65 N. Y. 463; *Thompson* v. *Fairbanks,* 196 U. S. 516.

The facts here constitute the equivalent, and more than the equivalent, of taking possession of the accounts re-

ceivable to the full extent that the nature of these choses
in action permitted. And since this was done before
any third parties had "fastened" a lien, it is enforcible
against third parties, including the receiver in bankruptcy
and his successor trustee. *Bailey* v. *Baker Ice Machine
Co.,* 239 U. S. 275–276; *Thompson* v. *Fairbanks, supra;
McCaffrey* v. *Woodin, supra; Sexton* v. *Kessler,* 225
U. S. 90.

The agreement in question was not recorded because
the recording acts of New York permit this to be done
only with reference to "goods and chattels," and exclude
choses in action from their operation. *Niles* v. *Methusa,*
162 N. Y. 546. The four-month rule does not apply to
the situation, since the intervening acts by which posses-
sion was taken of the after-acquired accounts relate back
to the date of the original agreement, which took place
more than four months previously. *Bracket* v. *Harvey,*
91 N. Y. 214; *Thompson* v. *Fairbanks, supra; Sexton* v.
*Kessler, supra.* Such cases as have been found which
deal with the assignment of intangibles or choses in
action, present or future, such as accounts, bonds, and
the like, sustain the position of the appellee and entitle
him to the proceeds of the balance of the accounts, at
least of those accounts which were included in the list
last delivered to him, until his loans are repaid in full
with interest. *Stackhouse* v. *Holden,* 66 A. D. (N. Y.)
423; *Sexton* v. *Kessler, supra; Greey* v. *Dockendorff,* 231
U. S. 516; *In re Michigan Furniture Company,* 249 Fed.
974; *Union Trust* v. *Bulkeley,* 150 Fed. 510; *In re Mc-
Cauley,* 158 Fed. 332. No question of good faith exists
in the case based upon the secrecy of the transaction,
which we maintain to be a condition inherent in it and
which the courts so recognize. *Greey* v. *Dockendorff,
supra; Stackhouse* v. *Holden, supra.*

It is the law in New York that a mortgage of goods
and chattels wherein the mortgagor reserves the right of

disposal, for his own benefit, is deemed fraudulent in law and void. The rule rests in the original conception that the visible possession of personal property indicated ownership,—a condition which cannot in its nature apply to such intangible property as choses in action, and which has never been held so to apply in any decisions which we have been able to find or which the appellant cites. The doctrine in question, based upon the conceptions of reputed ownership in the days when rights of property had their beginnings, must be deemed to be greatly out of joint with modern conceptions of industry and modes of possession; in any event, the doctrine, if it cannot be disregarded, should at least be limited and held within its present confines rather than extended into a field where it never before has played a part and where it can but serve as an embarrassment to business. Such considerations of public interest as here exist point clearly that way, particularly since those who enter into business relations know full well that the utilization of accounts receivable, in order to keep business liquid, is one of the commonest practices of everyday business.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Hub Carpet Company was adjudicated bankrupt by the federal court for southern New York in involuntary proceedings commenced September 26, 1921. Benedict, who was appointed receiver and later trustee, collected the book accounts of the company. Ratner filed in that court a petition in equity praying that the amounts so collected be paid over to him. He claimed them under a writing given May 23, 1921—four months and three days before the commencement of the bankruptcy proceedings. By it the company purported to assign to him, as collateral for certain loans, all accounts present and future. Those collected by the receiver were, so far as

appears, all accounts which had arisen after the date of the assignment, and were enumerated in the monthly list of accounts outstanding which was delivered to Ratner September 23. Benedict resisted the petition on the ground that the original assignment was void under the law of New York as a fraudulent conveyance; that, for this reason, the delivery of the September list of accounts was inoperative to perfect a lien in Ratner; and that it was a preference under the Bankruptcy Act. He also filed a cross-petition in which he asked that Ratner be ordered to pay to the estate the proceeds of certain collections which had been made by the company after September 17 and turned over to Ratner pursuant to his request made on that day. The company was then insolvent and Ratner had reason to believe it to be so. These accounts also had apparently been acquired by the company after the date of the original assignment.

The District Judge decided both petitions in Ratner's favor. He ruled that the assignment executed in May was not fraudulent in law; that it created an equity in the future acquired accounts; that because of this equity, Ratner was entitled to retain, as against the bankrupt's estate, the proceeds of the accounts which had been collected by the company in September and turned over to him; that by delivery of the list of the accounts outstanding on September 23, this equity in them had ripened into a perfect title to the remaining accounts; and that the title so perfected was good as against the supervening bankruptcy. Accordingly, the District Court ordered that, to the extent of the balance remaining unpaid on his loans, there be paid Ratner all collections made from accounts enumerated in any of the lists delivered to Ratner; and that the cross-petition of Benedict be denied. There was no finding of fraud in fact. On appeal, the Circuit Court of Appeals affirmed the order. 282 Fed. 12. A writ of certiorari was granted by this Court. 259 U. S. 579.

The rights of the parties depend primarily upon the law of New York. *Hiscock* v. *Varick Bank of N. Y.*, 206 U. S. 28. It may be assumed that, unless the arrangement of May 23 was void because fraudulent in law, the original assignment of the future acquired accounts became operative under the state law, both as to those paid over to Ratner before the bankruptcy proceedings and as to those collected by the receiver;[1] and that the assignment will be deemed to have taken effect as of May 23. *Sexton* v. *Kessler,* 225 U. S. 90, 99. That being so, it is clear that, if the original assignment was a valid one under the law of New York, the Bankruptcy Act did not invalidate the subsequent dealings of the parties. *Thompson* v. *Fairbanks,* 196 U. S. 516; *Humphrey* v. *Tatman,* 198 U. S. 91. The sole question for decision is, therefore, whether on the following undisputed facts the assignment of May 23 was in law fraudulent.

The Hub Carpet Company was, on May 23, a mercantile concern doing business in New York City and proposing to continue to do so. The assignment was made there to secure an existing loan of $15,000, and further advances not exceeding $15,000 which were in fact made July 1, 1921. It included all accounts receivable then outstanding and all which should thereafter accrue in the ordinary course of business. A list of the existing accounts was delivered at the time. Similar lists were to be delivered to Ratner on or about the 23d day of each succeeding month containing the accounts outstanding at such future dates. Those enumerated in each of the lists delivered prior to September, aggregated between $100,000 and $120,000. The receivables were to be collected by the company. Ratner was given the right, at any time, to

---

[1] *Williams* v. *Ingersoll,* 89 N. Y. 508, 518–520; *Coats* v. *Donnell,* 94 N. Y. 168, 177. See *Rochester Distilling Co.* v. *Rasey,* 142 N. Y. 570, 580; *MacDowell* v. *Buffalo Loan, etc. Co.,* 193 N. Y. 92, 104. Compare *New York Security & Trust Co.* v. *Saratoga Gas, etc. Co.,* 159 N. Y. 137; *Zartman* v. *First National Bank,* 189 N. Y. 267.

demand a full disclosure of the business and financial conditions; to require that all amounts collected be applied in payment of his loans; and to enforce the assignment although no loan had matured. But until he did so, the company was not required to apply any of the collections to the repayment of Ratner's loan. It was not required to replace accounts collected by other collateral of equal value. It was not required to account in any way to Ratner. It was at liberty to use the proceeds of all accounts collected as it might see fit. The existence of the assignment was to be kept secret. The business was to be conducted as theretofore. Indebtedness was to be incurred, as usual, for the purchase of merchandise and otherwise in the ordinary course of business. The amount of such indebtedness unpaid at the time of the commencement of the bankruptcy proceedings was large. Prior to September 17, the company collected from accounts so assigned about $150,000, all of which it applied to purposes other than the payment of Ratner's loan. The outstanding accounts enumerated in the list delivered September 23 aggregated $90,000.

Under the law of New York a transfer of property as security which reserves to the transferor the right to dispose of the same, or to apply the proceeds thereof, for his own uses is, as to creditors, fraudulent in law and void.[2]

---

[2] *Griswold* v. *Sheldon,* 4 N. Y. 580; *Edgell* v. *Hart,* 9 N. Y. 213; *Russell* v. *Winne,* 37 N. Y. 591; *Southard* v. *Benner,* 72 N. Y. 424; *Potts* v. *Hart,* 99 N. Y. 168; *Hangen* v. *Hachemeister,* 114 N. Y. 566; *Mandeville* v. *Avery,* 124 N. Y. 376; *Skilton* v. *Codington,* 185 N. Y. 80; *Zartman* v. *First National Bank,* 189 N. Y. 267; *In re Marine Construction & Dry Docks Co.,* 135 Fed. 921, 144 Fed. 649; *In re Davis,* 155 Fed. 671; *In re Hartman,* 185 Fed. 196; *In re Volence,* 197 Fed. 232; *In re Purtell,* 215 Fed. 191; *In re Leslie-Judge Co.,* 272 Fed. 886. Compare *Frost* v. *Warren,* 42 N. Y. 204; also *Lukins* v. *Aird,* 6 Wall. 78; *Robinson* v. *Elliot,* 22 Wall. 513; *Smith* v. *Craft,* 123 U. S. 436; *Means* v. *Dowd,* 128 U. S. 273; *Etheridge* v. *Sperry,* 139 U. S. 266; *Huntley* v. *Kingman,* 152 U. S. 527; *Knapp* v. *Milwaukee Trust Co.,* 216 U. S. 545.

This is true whether the right of disposition for the transferor's use be reserved in the instrument [3] or by agreement *in pais,* oral or written; [4] whether the right of disposition reserved be unlimited in time [5] or be expressly terminable by the happening of an event; [6] whether the transfer cover all the property of the debtor [7] or only a part; [8] whether the right of disposition extends to all the property transferred [9] or only to a part thereof; [10] and whether the instrument of transfer be recorded or not. [11]

If this rule applies to the assignment of book accounts, the arrangement of May 23 was clearly void; and the equity in the future acquired accounts, which it would otherwise have created, [12] did not arise. Whether the rule applies to accounts does not appear to have been passed upon by the Court of Appeals of New York. But it would seem clear that whether the collateral consist of chattels

---

[3] *Edgell* v. *Hart,* 9 N. Y. 213, 216; *Zartman* v. *First National Bank,* 189 N. Y. 267, 270.

[4] *Russell* v. *Wynne,* 37 N. Y. 591, 595; *Southard* v. *Benner,* 72 N. Y. 424, 432; *Potts* v. *Hart,* 99 N. Y. 168, 172–173.

[5] *Southard* v. *Benner,* 72 N. Y. 424, 430; *Potts* v. *Hart,* 99 N. Y. 168, 172.

[6] *Zartman* v. *First National Bank,* 189 N. Y. 267, 270.

[7] *Zartman* v. *First National Bank,* 189 N. Y. 267, 269.

[8] *Russell* v. *Winne,* 37 N. Y. 591; *Southard* v. *Benner,* 72 N. Y. 424.

[9] *Potts* v. *Hart,* 99 N. Y. 168, 172.

[10] *Russell* v. *Winne,* 37 N. Y. 591, 593; *In rè Leslie-Judge Co.,* 272 Fed. 886, 888.

[11] *Potts* v. *Hart,* 99 N. Y. 168, 171. N. Y. Personal Property Law, § 45; Laws, 1911, c. 626, authorizes the creation of a general lien or floating charge upon a stock of merchandise, including after-acquired chattels, and upon accounts receivable resulting from the sale of such merchandise. It provides that this lien or charge shall be valid against creditors provided certain formalities are observed and detailed filing provisions are complied with. It is possible that, if its conditions are performed, the section does away with the rule "that retention of possession by the mortgagor with power of sale for his own benefit is fraudulent as to creditors."

[12] *Field* v. *Mayor, etc. of New York,* 6 N. Y. 179.

or of accounts, rese... .tion of dominion inconsistent with the effective disposition of title must render the transaction void. · Ratner asserts that the rule stated above rests upon ostensible ownership, and argues that the doctrine of ostensible ownership is not applicable to book accounts. That doctrine raises a presumption of fraud where chattels are mortgaged (or sold) and possession of the property is not delivered to the mortgagee (or vendee).[13] The presumption may be avoided by recording the mortgage (or sale). It may be assumed, as Ratner contends, that the doctrine does not apply to the assignment of accounts. In their transfer there is nothing which corresponds to the delivery of possession of chattels. The statutes which embody the doctrine and provide for recording as a substitute for delivery do not include accounts. A title to an account good against creditors may be transferred without notice to the debtor [14] or record of any kind.[15] But it is

---

[13] *Smith* v. *Acker*, 23 Wend. 653; *Griswold* v. *Sheldon*, 4 N. Y 580, 590; *Edgell* v. *Hart*, 9 N. Y. 213, 218; *Conkling* v. *Shelley*, 28 N. Y. 360. The statutes to this effect merely embody the common-law rule. But, in New York, an additional statute provides that unrecorded chattel mortgages under such circumstances are absolutely void as to creditors. New York Lien Law, § 230; Laws, 1909, c. 38, § 230, as amended 1911, c. 326, and 1916, c. 348. See *Seidenbach* v. *Riley*, 111 N. Y. 560; *Karst* v. *Kane*, 136 N. Y. 316; *Stephens* v. *Perrine*, 143 N. Y. 476; *Russell* v. *St. Mart*, 180 N. Y. 355. See *Stewart* v. *Platt*, 101 U. S. 731, 735. Compare *Preston* v. *Southwick*, 115 N. Y. 139; *Nash* v. *Ely*, 19 Wend. (N. Y.) 523; *Goodwin* v. *Kelly*, 42 Barb. (N. Y.) 194. In the case of a transfer of personal property by sale, retention of possession creates a rebuttable presumption of fraud. See *Kimball* v. *Cash*, 176 N. Y. Supp. 541; also *New York Ice Co.* v. *Cousins*, 23 App. Div. 560; *Rheinfeldt* v. *Dahlman*, 43 N. Y. Supp. 281; *Tuttle* v. *Hayes*, 107 N. Y. Supp. 22; *Young* v. *Wedderspoon*, 126 N. Y. Supp. 375; *Sherry* v. *Janov*, 137 N. Y. Supp. 792; *Gisnet* v. *Moeckel*, 165 N. Y. Supp. 82. In order to create a valid pledge of tangible personalty, there must be a delivery to the pledgee. *In re P. J. Sullivan Co.*, 247 Fed. 139, 254 Fed. 660.

[14] *Williams* v. *Ingersoll*, 89 N. Y. 508, 522.

[15] *Niles* v. *Mathusa*, 162 N. Y. 546; *National Hudson River Bank* v. *'haskin*, 28 App. Div. 311, 315; *Curtis* v. *Leavitt*, 17 Barb. (N. Y.)

not true that the rule stated above and invoked by the receiver is either based upon or delimited by the doctrine of ostensible ownership. It rests not upon seeming own-. ership because of possession retained, but upon a lack of ownership because of dominion reserved. It does not raise a presumption of fraud. It imputes fraud conclusively because of the reservation of dominion inconsistent with the effective disposition of title and creation of a lien.

The nature of the rule is made clear by its limitations. Where the mortgagor of chattels agrees to apply the proceeds of their sale to the payment of the mortgage debt or to the purchase of other chattels which shall become subject to the lien, the mortgage is good as against creditors, if recorded.[16] The mortgage is sustained in such cases " upon the ground that such sale and application of proceeds is the normal and proper purpose of a chattel mortgage, and within the precise boundaries of its lawful operation and effect. It does no more than to substitute the mortgagor as the agent of the mortgagee to do exactly what the latter had the right to do, and what it was his privilege and his duty to accomplish. It devotes, as it should, the mortgaged property to the payment of the mortgage debt." The permission to use the proceeds to furnish substitute collateral " provides only for a shifting of the lien from one piece of property to another taken in exchange." *Brackett* v. *Harvey,* 91 N. Y. 214, 221, 223.

---

309, 364; *Young* v. *Upson,* 115 Fed. 192. In 1916, Section 230 of the New York Lien Law was amended to the effect that a mortgage, pledge, or lien on stocks or bonds given to secure the repayment of a loan is, if not recorded, absolutely void against creditors unless such securities are delivered to the mortgagee or pledgee on the day the loan is made. See N. Y. Laws, 1916, c. 348.

[16] *Conkling* v. *Shelley,* 28 N. Y. 360; *Brackett* v. *Harvey,* 91 N. Y. 214; *Spaulding* v. *Keyes,* 125 N. Y. 113; *Briggs* v. *Gelm,* 122 App. Div. 102. See *Robinson* v. *Elliot,* 22 Wall. 513, 524; *People's Savings Bank* v. *Bates,* 120 U. S. 556, 561.

On the other hand, if the agreement is that the mortgagor may sell and use the proceeds for his own benefit, the mortgage is of no effect although recorded. Seeming ownership exists in both classes of cases because the mortgagor is permitted to remain in possession of the stock in trade and to sell it freely. But it is only where the unrestricted dominion over the proceeds is reserved to the mortgagor that the mortgage is void. This dominion is the differentiating and deciding element. The distinction was recognized in *Sexton* v. *Kessler,* 225 U. S. 90, 98, where a transfer of securities was sustained.[17] It was pointed out that a reservation of full control by the mortgagor might well prevent the effective creation of a lien in the mortgagee and that the New York cases holding such a mortgage void rest upon that doctrine.

The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies,[18] the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit.

In the case at bar, the arrangement for the unfettered use by the company of the proceeds of the accounts pre-

---

[17] See note 18, *infra.*

[18] *Young* v. *Upson,* 115 Fed. 192. If it is agreed that the transferor may use the original collateral for his own purposes upon the substitution of other of equal value, the transfer is not thereby invalidated. *Clark* v. *Iselin,* 21 Wall. 360 (book accounts); *Sexton* v. *Kessler,* 225 U. S. 90 (negotiable securities); *Chapman* v. *Hunt,* 254 Fed. 768 (book accounts). Compare *Casey* v. *Cavaroc,* 96 U. S. 467.

cluded the effective creation of a lien [19] and rendered the original assignment fraudulent in law. Consequently. the payments to Ratner and the delivery of the September list of accounts were inoperative to perfect a lien in him, and were unlawful preferences.[20] On this ground, and also because the payment was fraudulent under the law of the State, the trustee was entitled to recover the amount.[21]

*Stackhouse* v. *Holden*, 66 App. Div. 423, is relied upon by Ratner to establish the proposition that reservation of dominion does not invalidate an assignment of accounts. The decision was by an intermediate appellate court, and, although decided in 1901, appears never to have been cited since in any court of that State.[22] There was a strong dissenting opinion. Moreover, the case is perhaps distinguishable on its facts, p. 426. *Greey* v. *Dockendorff*, 231 U. S. 513, upon which Ratner also relies, has no bearing on the case at bar. It involved assignment of accounts, but there was no retention of dominion by the bankrupt. The sole question was whether successive assignments of accounts by way of security, made in pursuance of a contract, were bad because the contract embraced all the accounts. The lien acquired before knowledge by either party of insolvency was held good against the trustee.

*Reversed.*

---

[19] Compare *Mechanics' Bank* v. *Ernst*, 231 U. S. 60, 67.

[20] *Schaupp* v. *Miller*, 206 Fed. 575; *Grimes* v. *Clark*, 234 Fed. 604; *Gray* v. *Breslof*, 273 Fed. 526, 527.

[21] *Mandeville* v. *Avery*, 124 N. Y. 376, 382; *Stimson* v. *Wrigley*, 86 N. Y. 332, 338; *Dutcher* v. *Swartwood*, 15 Hun (N. Y.) 31.

[22] It was cited in *Young* v. *Upson*, 115 Fed. 192 (Circ. Ct.); *In re Michigan Furniture Co.*, 249 Fed. 978 (D. Ct.); and in the opinion here under review.