### In re O'NEAL FURNITURE CO.
#### No. 1186.

District Court, E. D. Texas, Beaumont Division.

April 6, 1933.

See, also, 3 F. Supp. 108.

R. E. Masterson, of Beaumont, Tex., for petitioner City Nat. Bank of Beaumont.

Sonfield & Sonfield, of Beaumont, Tex., for trustee in bankruptcy.

KENNERLY, District Judge.

This is a hearing in this cause of two petitions for review by a creditor, the City National Bank of Beaumont. In one, it complains of the refusal of a referee in bankruptcy to allow its claim of $6,799.23 as one secured by a lien on certain furniture accounts or mortgages belonging to the furniture company, and, in the other, it complains of an order of such referee confirming the sale by the trustee of such accounts, etc.

The referee's summary of the evidence and findings on the first mentioned question are as follows:

"The O'Neal Furniture Company, a Texas Corporation with E. C. O'Neal, President, filed a voluntary petition in bankruptcy on April 29th, 1932, and was adjudicated a bankrupt by virtue thereof on the 29th day of April, 1932.

"The City National Bank of Beaumont filed its claim against said estate on June 1st, 1932, in the amount of Six Thousand Seven Hundred and Ninety Nine ($6,799.23) Dollars and Twenty Three cents. On November 11th, 1932, the Trustee of the estate, J. Zorn, filed a contest to the said claim. On November 17th, 1932, the said Trustee filed his amended contest, and on November 17th the City National Bank of Beaumont filed its amended claim in answer to the contest.

"In the proof of claim filed by the City National Bank of Beaumont, hereinafter called Bank, it was alleged that the bankrupt estate owed the Bank $6,799.23, as evidenced by two promissory notes, one dated February 17th, 1932 for the sum of $4,000.00 due and payable ninety (90) days after date, and the other note dated April 23rd, 1932 for the sum of $3,000.00, due and payable fifteen (15) days after date, less a credit of $200.77, leaving a balance due on said note of $2,799.-23. The proof sets out that the Bank held as security for the payment of said note, certain accounts receivable belonging to the bankrupt estate, together with the Sales and Lease Contracts securing the payment thereof and sold to the Bank by the bankrupt by instrument dated December 22nd, 1931, aggregating $54,049.04, a copy of said assignment together with the accounts was attached to the proof.

"The mortgage or assignment from the bankrupt to the Bank was not filed in the Chattel Mortgage records, Jefferson County prior to bankruptcy.

"The Bank had loaned money to bankrupt on numerous occasions since its organization. On November 19th, 1931 a note for Ten Thousand ($10,000.00) Dollars was executed by the O'Neal Furniture Company to the Bank and in December the Bank called on the Furniture Company for securities, as the Bank's policy at that time was to call for security or additional security on all of its accounts. Arrangements were made by J. T. Shelby, Vice President of the Bank, and E. C. O'Neal, President of the Furniture Company, whereby the Furniture Company would assign certain mortgaged accounts to the Bank as security for the note, and on December 22nd an assignment was executed transferring the accounts totaling $54,049.04 to the Bank as security for the Ten Thousand ($10,000.00) Dollar note. Sometime in December Mr. O'Neal delivered to Mr. Shelby the contracts and leases covering the accounts pledged and the Bank attempted to check the items by the mortgage, but was unable to do so and requested that the Furniture Company send someone over to check up the matter. Finally someone from the Furniture Company went to the Bank and talked with Mr. Shelby regarding the accounts and the question arose regarding collections on the various items. Mr. Shelby told them that he was not going to take the note and make the collections and it was finally decided that the Furniture Company would take the accounts back and make collections. No accounts were ever collected at the Bank.

"From an Auditor's report requested by the Court and filed with the papers in this case it appears that the bankrupt company collected over $17,000.00 on the accounts up to and including the date of bankruptcy, and pulled furniture on accounts over the same period of time totaling $4,496.85, leaving at the time of bankruptcy accounts totaling $35,197.68. On these the Trustee collected and pulled accounts totaling nearly $4,000.-00, leaving on December 1st, 1932 as total amount due on pledged accounts a balance of $31,403.40.

"Mr. Shelby the vice president of the Bank, who handled the accounts for the Bank testified that it was his understanding that when the accounts were returned to the

O'Neal Furniture Company that the proceeds from the collections on the accounts were to be held separate and intact and that settlement would be made when the note fell due and pay the proceeds of the collections at maturity of the note to the Bank. It was not his understanding that the Furniture Company could take the collections and use them in any way they saw fit, and he did not give them permission to do it. He did not have an understanding with the officers of the Furniture Company that they were to hold the payment of the collections until maturity of the note, it was his assumption that they would do it. He did not recollect any special agreement but expected the Furniture Company to hold the collections for his account and the first he knew they were not doing so was in February when the note fell due, and the bookkeeper of the Furniture Company told him that they did not have a separate accounting of the collections.

"On February 17th, 1932, the note for Ten Thousand ($10,000.00) Dollars matured and the Furniture Company gave to the Bank in lieu and in extension of said Ten Thousand ($10,000.00) Dollar note, but not in cancellation thereof, the following notes, one for Three Thousand ($3,000.00) Dollars due at thirty days, one for Three Thousand ($3,-000.00) Dollars due at sixty days and one for Four Thousand ($4,000.00) Dollars due at ninety days.

"When the Ten Thousand ($10,000.00) Dollar note fell due on February 17th and before the other notes were executed Mr. Shelby inquired of the bookkeeper for the Furniture Company, a Mrs. Gudgell, what had been done with the collections made on the accounts. She appeared surprised and said that she did not know they were mortgaged to the Bank and that she had made no separate accounting. This was the first time Mr. Shelby knew they were not holding the collections separate. The Furniture Company claimed they did not have any money to pay him for these collections and Mr. Shelby agreed with Mrs. Gudgell to make the three notes mentioned above due thirty, sixty and ninety days after date. When the first Three Thousand ($3,000.00) Dollar note matured in March the Furniture Company was not in a position to pay it. Mr. Shelby told them he wanted an accounting of the money collected. Then 'on March 18th, 1932, the Furniture Company paid Sixteen Hundred ($1,-600.00) Dollars, on March 23rd, Nine Hundred ($900.00) Dollars making a total of Three Thousand ($3,000.00) Dollars to cover the first note. At the time the second note

of Three Thousand ($3,000.00) Dollars fell due on April 17th, it was not paid and on April 23rd a new note was executed, due and payable fifteen (15) days after date. Prior to the time this second note fell due a voluntary petition in bankruptcy had been filed.

"A few days before bankruptcy Mrs. Gudgell, the bookkeeper phoned Mr. Shelby asking if he would be in the Bank, and told him she was coming over. She was delayed however and Mr. Shelby left the Bank. When he returned he found that Mrs. Gudgell had brought the lease contracts and mortgages back to the Bank and that they were filed in the Bank's vault, and the Bank still retains possession of them. Mr. Shelby did not request the return of the accounts at that time and did not know Mrs. Gudgell was to bring them back. This was shortly before bankruptcy.

### "Findings of the Referee.

"I found upon a hearing of the above matter that the claim of the City National Bank as filed be allowed only as an unsecured claim against the bankrupt estate on the ground that the assignment of December 22nd, 1931 was fraudulent in law and became inoperative by virtue of the fact that the Bank knew in February, at the time it renewed the original obligation that the bankrupt estate was not accounting for the collections made on the accounts and was not holding separate the money collected thereon, but, to the contrary was using the collections as it saw fit and that by renewing the note and permitting the bankrupt to retain possession of the lease contracts and continue collecting without making any special effort to see that collections were applied on the note.

"I am of the opinion that this action or part of the Bank gave the bankrupt *unfettered use of the proceeds of the accounts* and therefore came within the rule of the Benedict v. Ratner Case [268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991] cited in my order."

1. The bank attacks, among others, the foregoing finding of the referee that, after the three notes were executed (February 17, 1932) in lieu and in extension of the $10,-000 note, the furniture company had the "unfettered use of the proceeds of the accounts." It is well settled that findings of fact of referees, where (as here) there is evidence to support them, must be regarded as unassailable.

Further, I cannot say, considering the facts before him, that the referee was wrong.

2. The referee cites Benedict v. Ratner, 268 U. S. 358, 45 S. Ct. 566, 69 L. Ed. 996,

in support of the view that the Bank, under such findings, has no valid lien. The bank claims that Benedict v. Ratner is based on a New York statute, and, there being no similar Texas statute, that it has no application here. Benedict v. Ratner is referred to with approval in Coppard v. Martin, 15 F.(2d) 743, 745 (5th C. C. A.), a Texas case. Besides, I think it may be said generally that no valid lien exists where, as here, the debtor has possession of, and the right to collect, the accounts, and the "unfettered use of the proceeds." There can be no valid lien where the debtor is authorized to use, as he sees fit, such proceeds, and is not required to account to the creditor or to make substitutions.

3. The petition for review by the bank of the orders of the referee, ordering and confirming the sale of the accounts, upon which the bank claims a lien, is predicated upon the theory that the bank has a valid lien on such accounts. Since it has no such lien, its complaint as set forth in its petition for review is without merit.

The orders of the referee are affirmed.